**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JAMES SCOTT BOYD,

Plaintiff,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Case No. 2:25-cv-00964-JB-DLM

**FEDERAL DEFENDANTS' MOTION TO DISMISS COMPLAINT & SUPPORTING MEMORANDUM**[1]

[1] Pursuant to D.N.M.LR-Civ. 7.1(a), the United States has conferred with the parties. Plaintiff James Scott Boyd did not indicate a position on the motion. Defendants Elephant Butte Irrigation District, State of New Mexico, and the New Mexico Office of the State Engineer do not oppose.

# TABLE OF CONTENTS


MOTION ........ 1

MEMORANDUM IN SUPPORT ........ 1

I. Background ........ 3

II. Legal Standards ........ 10

a. Motion to Dismiss ........ 10

b. The Takings Clause, Tucker Act, & Little Tucker Act ........ 11

c. Rooker-Feldman Doctrine ........ 13

d. Res Judicata ........ 13

III. Argument ........ 15

a. The Court Lacks Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1). ........ 15

i. The Complaint must be dismissed because the Rooker-Feldman Doctrine Applies. ........ 16

ii. There is No Statutory Basis for Jurisdiction. ........ 23

1. 42 U.S.C. § 1983 & the Fourteenth Amendment Do Not Apply Against the United States (Claims II-IV) ........ 23

iii. Boyd Has Not Invoked This Court's Little Tucker Act Jurisdiction (Claims I & V). ........ 25

b. Boyd has Failed to State a Claim (Fed. R. Civ. P. 12(b)(6)). ........ 27

i The Statutes of Limitation on Boyd's Claims have Run. ........ 27

1. The Tucker Act & Little Tucker Act have a six-year statute of limitations (Counts I & V). ........ 27

2. Section 1983 has a three-year statute of limitations (Counts II-IV). ........ 29

ii. Res Judicata bars Counts I & II. ........ 30

1. Boyd's Inverse Condemnation Claim (Count I) Was Litigated Before the Court of Federal Claims. ........ 30

2. Boyd's Due Process Claim (Count II) Must Be Dismissed, Because It Was Already Litigated and Decided in *Rio Grande III* ............................................. 33

iii. Boyd's Judicial Takings Claim (Count V) Fails to State a Claim. ............................................................................. 35

1. Judicial Takings Are Not Cognizable. ............................ 36

2. The United States Did Not Engage in Judicial Activity. ................................................................ 36

3. Even under the *Stop the Beach* plurality rule, Boyd fails to state a plausible claim for a judicial taking. .......... 38

IV. Conclusion ........................................................................................ 40

## TABLES OF AUTHORITES


Page(s)

**Cases**

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) ........ 37

*Alvarado Hosp., LLC v. Price*,
868 F.3d 983 (Fed. Cir. 2017) ........ 26

*Beals v. U.S. Dep't of Just.*,
460 F. App'x 773 (10th Cir. 2012) ........ 24

*Belhomme v. Widnall*,
127 F.3d 1214 (10th Cir. 1997) ........ 24

*Berry v. United States*,
159 Fed. Cl. 844 (2022) ........ 36

*Boyd Est. ex rel. Boyd v. United States*,
344 P.3d 1013 (N.M. Ct. App. 2014) ........ 7, 8, 23, 35

*Boyd Est. ex rel. Boyd,*
345 P.3d 341 (N.M. 2015) ........ 35

*Boyd v. United States*,
1997 U.S. Claims LEXIS 345 (Fed. Cl. Apr. 21, 1997) ........ 5, 30, 31

*Boyd v. United States*, No. 93-CV-60290-AA (E.D. Mich. Feb. 28, 1995) ........ 5, 6

*Campbell v. City of Spencer,*
682 F.3d 1278 (10th Cir. 2012) ........ 17

*Chance v. Zinke*,
898 F.3d 1025 (10th Cir. 2018) ........ 28

*Chilcoat v. San Juan Cnty., Utah*,
41 F.4th 1196 (10th Cir. 2022) ........ 11

*Colo. Dep't of Highways v. U.S. Dep't of Transp.,*
840 F.2d 753 (10th Cir. 1988) ........ 12, 26

*Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*,
No. 24-808, 2026 WL 135998, 146 S.Ct. 579 (Jan. 20, 2026) ........ 23

*Cortez v. EEOC,*
585 F. Supp. 2d 1273 (D.N.M. 2007) ........ 12, 25

*Cory v. Fahlstrom*,
143 F. App'x 84 (10th Cir. 2005) ........ 15

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ........ 36

*De Baca v. United States*,
399 F. Supp. 3d 1052 (D.N.M. 2019) .......... 10

*Dry v. United States*,
235 F.3d 1249 (10th Cir. 2000) .......... 24

*F.D.I.C. v. Harger*,
778 F. Supp. 2d 1123 (D.N.M. 2011) .......... 2, 13

*First State Bank v. Muzio*,
1983-NMSC-057, 100 N.M. 98 .......... 16

*Gee v. Pacheco*,
627 F.3d 1178 (10th Cir. 2010) .......... 11

*Gilchrist v. Citty*,
71 F. App'x 1 (10th Cir. 2003) .......... 11

*Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*,
490 F.3d 940 (Fed. Cir. 2007) .......... 12, 26

*H&M Assocs., LLC v. United States*,
165 Fed. Cl. 174 (2023) .......... 27

*Hagerman Irr. Co. v. McMurry,*
1911-NMSC-021, 16 N.M. 172 .......... 38

*Holt v. United States*,
46 F.3d 1000 (10th Cir. 1995) .......... 11

*Iowa Tribe of Kan. & Neb. v. Salazar*,
607 F.3d 1225 (10th Cir. 2010) .......... 24

*John R. Sand & Gravel Co. v. United States*,
552 U.S. 130 (2008) .......... 28

*Khalik v. United Air Lines*,
671 F.3d 1188 (10th Cir. 2012) .......... 11

*Kiowa Indian Tribe of Okla. v. Hoover*,
150 F.3d 1163 (10th Cir. 1998) .......... 13

*Lymon v. Aramark Corp*.,
728 F. Supp. 2d 1207 (D.N.M. 2010) .......... 29

*MACTEC, Inc. v. Gorelick*,
427 F.3d 821 (10th Cir. 2005) .......... 13, 15

*May v. Parker-Abbott Transfer & Storage, Inc.,*
899 F.2d 1007 (10th Cir. 1990) .......... 14

*Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Trust Mortg. Pass-Through Certificates, Series 2006-4*,
880 F.3d 1169 (10th Cir. 2018) .......... 13

*Minnesota Co. v. National Co.*,
3 Wall. 332, 18 L.Ed. 42 (1865) .......... 14

*Moore v. Pub. Defs. Off.*,
76 Fed. Cl. 617 (2007) .......... 31

*Murphy v. Klein Tools, Inc.*,
935 F.2d 1127 (10th Cir.1991) .......... 31

*Nevada v. United States*,
463 U.S. 110 (1983) .......... 14

*New Mexico Consol. Constr., LLC v. City Council of the City of Santa Fe*,
97 F. Supp. 3d 1287 (D.N.M. 2015) .......... 12

*New Mexico ex rel. King v. Cap. One Bank (USA) N.A.*,
980 F. Supp. 2d 1346 (D.N.M. 2013) .......... 31, 32

*Nwosun v. Gen. Mills Rests., Inc.*,
124 F.3d 1255 (10th Cir. 1997) .......... 15, 31, 33

*Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc.*,
720 F. Supp. 3d 1087 (D.N.M. 2024) .......... 29

*Petro-Hunt, L.L.C. v. United States*,
126 Fed. Cl. 367 (2016) .......... 36

*Plotner v. AT&T Corp.*,
224 F.3d 1161 (10th Cir. 2000) .......... 15

*Pueblo of Pojoaque v. Biedscheid*,
689 F. Supp. 3d 1033 (D.N.M. 2023) .......... 13

*Purgatory Recreation I, LLC v. United States*,
157 F.4th 1173 (10th Cir. 2025) .......... 27

*Rico-Reyes v. New Mexico*,
503 F. Supp. 3d 1055 (D.N.M. 2020) .......... 28

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) .......... 11

*Rio Grande Dam & Irrigation Co v. United States (“Rio Grande III”)*,
215 U.S. 266 (1909) .......... 4, 5, 8, 35, 39

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
599 F.3d 1165 (10th Cir. 2010) .......... 24

*Roedler v. Dep’t of Energy*,
255 F.3d 1347 (Fed. Cir.2001) .......... 12, 25

*Ruiz v. McDonnell*,
299 F.3d 1173 (10th Cir. 2002) .......... 10

*S.E.C. v. Goldstone*,
952 F. Supp. 2d 1060 (D.N.M. 2013) ... 3

*Schueller v. Wells Fargo & Co.*,
303 F. Supp. 3d 1171 (D.N.M. 2018) ... 15

*Smith v. City of Enid By & Through Enid City Comm'n,*
149 F.3d 1151 (10th Cir. 1998) ... 29

*Smith v. United States*,
561 F.3d 1090 (10th Cir. 2009) ... 25

*State ex rel. Off. of State Eng'r v. Boyd*,
No. A-1-CA-36291, 2021 WL 2592372 (N.M. Ct. App. June 24, 2021) ... 1, 9

*State of Texas v. State of New Mexico*,
No. 141, Original ... 9, 23

*Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*,
560 U.S. 702 (2010) ... 36, 38

*Torrez v. Eley*,
378 F. Appx'. 770 (10th Cir. 2010) ... 28

*Ullery v. Bradley*,
949 F.3d 1282 (10th Cir. 2020) ... 11

*United States v. Beaver Irr. Land & Power Co.*,
21 F.2d 1001 (8th Cir. 1927) ... 3

*United States v. City of Las Cruces*,
289 F.3d 1170 (10th Cir. 2002) ... 6, 7

*United States v. Elephant Butte Irrigation Dist.*,
No. 97 CV 0803 JAP/RPL, 2014 WL 12783175 (D.N.M. Oct. 20, 2014) ... 3, 7

*United States v. Elephant Butte Irrigation Dist.*,
No. CV 97-803 JP/RLP, 2000 WL 36739525 (D.N.M. Aug. 22, 2000) ... 6

*United States v. Rio Grande Dam & Irr. Co.,*
1900-NMSC-042, 10 N.M. 617 (1900) ... 4

*United States v. Rio Grande Dam & Irr. Co.,*
1906-NMSC-013, 13 N.M. 386 ... 4, 34

*United States v. Rio Grande Dam & Irr.Co.,*
1898-NMSC-001, 9 N.M. 292 (1899) ... 4

*United States v. Rio Grande Dam & Irrigation Co (“Rio* Grande II”),
184 U.S. 416 (1902) ... 4

*United States v. Rio Grande Dam & Irrigation Co. (“Rio* Grande I”),
174 U.S. 690 (1899) ... 3, 4

*United States v. Wolny*,
133 F.3d 758 (10th Cir.1998) ........................................ 3

*Watkins v. Genesh, Inc.*,
135 F.4th 1224 (10th Cir. 2025) ........................................ 14, 15, 30

**Statutes**

28 U.S.C § 1346 ........................................ 31

28 U.S.C. § 1346(a)(2) ........................................ 12, 25

28 U.S.C. § 1491 ........................................ 31

28 U.S.C. § 1491(a)(1) ........................................ 12

28 U.S.C. § 1491(a)(2) ........................................ 27

28 U.S.C. § 1491(b)(1) ........................................ 27

28 U.S.C. § 2401 ........................................ 28

28 U.S.C. § 2409a(g) ........................................ 27

28 U.S.C. § 2501 ........................................ 28

42 U.S.C. § 1983 ........................................ 2, 15, 23, 29

General Revision Act, 26 Stat. 1095, 1102 (1891) ........................................ 3, 38

N.M. STAT. ANN. § 72-5-28 ........................................ 38

**Rules**

Fed. R. Civ. P. 12(b) ........................................ 10

Fed. R. Civ. P. 12(b)(1) ........................................ 1, 10, 13

Fed. R. Civ. P. 12(b)(6) ........................................ 1, 10, 11, 15, 28, 38

Fed. R. Civ. P. 60(c)(1) ........................................ 23

Fed. R. Civ. P. 60(d)(3) ........................................ 22

**Constitutional Provisions**

U.S. Const. amend. V ........................................ 12

U.S. Const. amend. XIV § 1 ........................................ 24

## MOTION

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Federal Defendants the United States of America, United States Department of Justice, and United States Department of the Interior hereby move to dismiss Plaintiff James Scott Boyd's Complaint, Dkt. No. 1. The grounds for the motion are set forth in the accompanying Memorandum in Support.

## MEMORANDUM IN SUPPORT

This case is another in decades of attempts by serial litigant James Scott Boyd ("Boyd") to "overturn critical decisions that have been in place from 1906 until as recently as 2020." *State ex rel. Off. of State Eng'r v. Boyd*, No. A-1-CA-36291, 2021 WL 2592372, at *2 (N.M. Ct. App. June 24, 2021).[1] He seeks relief that this Court cannot grant: the re-litigation, and ultimately overturning, of a series of decisions in New Mexico's state courts, the Court of Federal Claims, this Court, and even the United States Supreme Court. His claims today derive primarily from a legal battle fought–and resolved in the United States Supreme Court–more than a century ago. Boyd's alleged predecessor, Dr. Nathaniel Boyd, purportedly controlled the Rio Grande Dam & Irrigation Company (the "Company"), which sought to build dams and canals on the Rio Grande in New Mexico.[2] The Company did not complete construction within the five-year window allowed by law, and the Company was adjudged to have forfeited its rights.

Boyd alleges that the United States has engaged in a taking of his predecessors' property rights for which he is entitled to just compensation under the Just Compensation Clause of the Fifth Amendment (Count I); yet the Court of Federal Claims has already adjudicated his takings

---

[1] A brief summary is provided herein. A reference chart summarizing the more than 110 years of litigation between Boyd, Boyd's predecessors, and the United States is attached as *Exhibit 1*.

[2] It is not clear on the face of the complaint whether Boyd is in fact the successor of the Company. For purposes of this Motion, Federal Defendants assume that he is. However, Federal Defendants reserve the right to challenge Boyd's factual contentions on the merits, if necessary.

claim, finding he has none. He alleges that his civil rights have been violated because his predecessors never received notice of the forfeiture proceeding (Count II); yet the New Mexico district court, New Mexico Territorial Supreme Court and United States Supreme Court determined that his predecessors did receive sufficient notice. He alleges that his civil rights have been violated by the 'obstruction of access to the Courts' (Count III); yet he has had repeated opportunities to litigate his concerns across this Court, the Court of Federal Claims, and the Lower Rio Grande Adjudication ("LRGA") in New Mexico's Third Judicial District Court. He simply does not agree with the decisions those courts have issued. Next, he alleges that his civil rights have been violated by purported favoritism towards defendant Elephant Butte Irrigation District ("EBID") (Count IV), yet he never explains how, except that his water right claims were rejected by the LRGA court, while EBID's have not been. Nor does he allege a vehicle by which his constitutional claims can be brought against the United States. Finally, he alleges that a judicial taking has occurred (Count V); yet he has not established that a judicial taking is constitutionally cognizable, nor has he identified any judicial entity that has caused any alleged taking, much less one acting at the behest of the United States. Even if he had, this Court would lack jurisdiction.

Put simply, Boyd's claims suffer from a litany of jurisdictional and doctrinal flaws. Initially, because he attacks state court judgments in federal court, this Court lacks subject-matter jurisdiction pursuant to the Rooker-Feldman Doctrine, which generally "prohibits federal suits that amount to appeals of state-court judgments." *F.D.I.C. v. Harger*, 778 F. Supp. 2d 1123, 1134 (D.N.M. 2011) (citation modified). Further, he has failed to invoke the Court's Little Tucker Act jurisdiction, and asserts claims under 42 U.S.C. § 1983 and the Fourteenth Amendment, which do not run against the United States. Even if this Court had subject-matter

jurisdiction, Boyd has failed to state a redressable claim, because Counts I & II are barred by res judicata, the statutes of limitations on all claims have run, and Count V is not cognizable. The Complaint should be dismissed.

## I. Background

Nathaniel Boyd formed the Company in 1893 to construct a network of diversion, storage, and distribution facilities to serve the Rio Grande Valley in southern New Mexico.[3] *See United States v. Elephant Butte Irrigation Dist.*, No. 97 CV 0803 JAP/RPL, 2014 WL 12783175, at *4 (D.N.M. Oct. 20, 2014), *aff'd sub nom. United States v. New Mexico ex rel. State Eng'r*, 624 F. App'x 671 (10th Cir. 2015). In 1895, the Secretary of the Interior granted permits to the Company to construct irrigation works under the General Revision Act of March 3, 1891, 26. Stat. 1101, ch. 561, Sec. 18, which granted a right of way through public lands "to any canal or ditch company formed for the purpose of irrigation[.]" *Id.* Such rights were subject to forfeiture if the project was not completed after five years. *Id.*, 26 Stat. 1102; *see also United States v. Beaver Irr. Land & Power Co.*, 21 F.2d 1001, 1002 (8th Cir. 1927) (same).

In 1897, the United States filed suit for an injunction against the Company in New Mexico's Third Judicial District, alleging that construction of the Company's project would interfere with the navigability of the Rio Grande, "the purpose of which was to restrain the defendant from constructing a dam across the Rio Grande river in the territory of New Mexico, and appropriating the waters of that stream for the purposes of irrigation." *United States v. Rio Grande Dam & Irrigation Co.* ("*Rio Grande I*"), 174 U.S. 690, 690 (1899). A preliminary

[3] Pursuant to Federal Rule of Evidence 201, the Court has authority to take judicial notice at any stage of a proceeding of adjudicative facts, including at the motion to dismiss phase. *See S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1192 (D.N.M. 2013). Adjudicative facts are "simply the facts of the particular case." *Id.* (quoting *United States v. Wolny*, 133 F.3d 758, 764 (10th Cir.1998)). While Boyd does not allege fully the history of the Company in his complaint, it has been summarized extensively in cases cited by Boyd, including by this Court.

injunction issued. *See United States v. Rio Grande Dam & Irr.Co.,* 1898-NMSC-001, ¶ 1, 9 N.M. 292 (1899). After further proceedings, the district court determined the Rio Grande was not navigable, dissolved the injunction, and the United States appealed to the New Mexico Territorial Supreme Court, which affirmed. *Id.* ¶ 11. The United States again appealed, this time to the United States Supreme Court, which "reversed … [and] remanded, with instructions to set aside the decree of dismissal" and to hold further proceedings into navigability. *Rio Grande I*, 174 U.S. 690 at 710.

After remand, the state district court again determined that the Company's plans would not impair navigability of the Rio Grande. *See United States v. Rio Grande Dam & Irrigation Co* ("*Rio Grande II*"), 184 U.S. 416, 421-22 (1902). The United States again appealed, and again, the New Mexico Territorial Supreme Court affirmed. *See United States v. Rio Grande Dam & Irr. Co.,* 1900-NMSC-042, ¶ 1, 10 N.M. 617 (1900). The United States then appealed to the United States Supreme Court once again, which again reversed and remanded with direction for the district court to take further evidence as to navigability and the impact of certain treaties withMexico. *Rio Grande II*, 184 U.S. at 425.

On the second remand to the New Mexico district court, the United States sought and obtained leave to file a supplemental complaint and served the same on counsel for the Company. *United States v. Rio Grande Dam & Irr. Co.,* 1906-NMSC-013, ¶ 2, 13 N.M. 386, *aff'd sub nom. Rio Grande Dam & Irrigation Co v. United States* ("*Rio Grande III*"), 215 U.S. 266 (1909). The amended complaint "was, in the main, identical with the original," except that it alleged "forfeiture of all the rights the appellants may have or claim under said act of Congress of March 3, 1891[.]" *Id.* at 397-98. After the United States served the supplemental complaint and the Company failed to answer, the New Mexico district court entered a decree of forfeiture

and injunction in which it found that:

> [D]efendants **<u>have not completed its said reservoir or said ditch, or any section thereof,</u>** within five years after the location of the said reservoir and its said ditch line, or within five years after the approval of the same by the Secretary of the Interior … has failed to construct or complete within the period of five years after the location of the said canal and reservoir any part or section of the same. Whereof, it is ordered, adjudged, and decreed by the court that the rights of the said defendants, or either of them, to construct and complete the said reservoir and said ditch, or any part thereof, under and by virtue of the said act of Congress of March 3, 1901, **<u>be and the same are hereby declared to be forfeited</u>**.

*Id.* at 395 (emphasis added); *see also* Exhibit 2 (district court order). The New Mexico Territorial Supreme Court affirmed, and on appeal, the U.S. Supreme Court affirmed the forfeiture of the Company's conditional rights. *Rio Grande III,* 215 U.S. at 278.

Eighty years later, unhappy with the Company's losses before both the New Mexico Territorial Supreme Court and the U.S. Supreme Court, Boyd began attempting to litigate his claims in a wide variety of forums. He first filed a series of Fifth Amendment takings lawsuits: three in the Court of Federal Claims (in 1989, 1993, and 1996), and another in the District Court for the Eastern District of Michigan (1993). Boyd dismissed the 1989 case voluntarily to seek a congressional reference that would waive the statute of limitations; after failing to receive the reference, he refiled in 1993 a pair of cases in the Court of Federal Claims and Eastern District of Michigan. *See Boyd v. United States*, 1997 U.S. Claims LEXIS 345 at *7 (Fed. Cl. Apr. 21, 1997). Both suits were dismissed: his 1993 Court of Federal Claims case was dismissed because the filing in the Eastern District of Michigan divested the Court of Federal Claims of jurisdiction; his 1993 Eastern District of Michigan case was dismissed for failure to prosecute. *Id.* (citing *Boyd v. United States*, No. 93-CV-60290-AA (E.D. Mich. Feb. 28, 1995)).

Boyd filed again in the Court of Federal Claims in 1996, seeking "as 'successors in

interest to the Capital Stock and vested property rights, including water rights, diversion dams, irrigating canals and works, contracts of the Dam & Irr. Co., compensatory, exemplary, punitive, and other appropriate relief,'" alleging an ongoing taking, and asserting a violation of Boyd's constitutional rights. *Id.* at *8-9 (citation modified). The United States moved to dismiss, asserting that any takings claims were time-barred. *Id.* at *9. Boyd argued that concealed fraud had tolled the statute of limitations, and that the taking was continuing such that the six-year limitation did not bar the claims. *Id.* at *12. The Court of Federal Claims agreed with the United States, finding that the six-year statute of limitations, a jurisdictional bar, deprived the court of jurisdiction, and that alleged fraud had not tolled the statute of limitations. *Id.* at *13-14. The court further did not countenance Boyd's continuing taking theory. The Court noted that "when the defendant allows a taking of a property interest to occur by a continuing process of events, a plaintiff may postpone filing suit until the nature and extent of the taking is clear," but that the nature and extent of the purported taking became clear in this case no later than December 13, 1909. This date was "the date when all the events which fixed defendant's alleged liability occurred and plaintiffs were, or should have been, aware of their existence." *Id.* at *16-17. The claims were therefore time-barred.

Around the same period, Boyd sought to intervene in a Quiet Title Act case filed by the United States in this Court. *See United States v. Elephant Butte Irrigation Dist*. ("US QTA Case"), No. CV 97-803 JP/RLP, 2000 WL 36739525, at *2, fn. 4 (D.N.M. Aug. 22, 2000), *vacated and remanded sub nom. United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002); *see also* US QTA Case Dkt. No. 137. This Court initially dismissed that case and denied Boyd's motion to intervene as moot. *Id.* In that case, the United States sought to quiet title to water rights for the Bureau of Reclamation's Rio Grande Project. *See City of Las Cruces*, 289

F.3d at 1175. On appeal, the Tenth Circuit vacated the dismissal and remanded for further proceedings on abstention in light of the LRGA. *Id.* On remand, this Court stayed the case instead. *See* U.S. QTA Case, Dkt. No. 281. In 2014, Boyd filed a renewed motion for intervention and to lift the stay. *Id.*, Dkt. No. 288. The Court rejected his motion, noting that it was an "attempt to procedurally undermine the state court water adjudication" and that it was "obvious that Boyd … [was] trying to obtain a different ruling in this Court after having suffered adverse decisions in state court"; the Tenth Circuit affirmed.[4] *United States v. Elephant Butte Irrigation Dist.*, 2014 WL 12783175, at *6 (D.N.M. Oct. 20, 2014), *aff'd sub nom. United States v. New Mexico ex rel. State Eng'r*, 624 F. App'x 671 (10th Cir. 2015).

Following these proceedings in federal court, Boyd sought to advance his claims in New Mexico's state courts by seeking a water right in the LRGA. Boyd asserted water right claims stemming "from activities of his predecessor in interest, the Rio Grande Dam and Irrigation Company (the Company) over a century ago." *Boyd Est. ex rel. Boyd v. United States*, 344 P.3d 1013, 1015 (N.M. Ct. App. 2014). The LRGA court initiated an expedited *inter se* proceeding to determine Boyd's claims derivative of the Company. The United States and EBID moved to dismiss his claims, and Boyd opposed, arguing that government interference had prevented any forfeiture of his rights. *Id*. at 1015-1017. He also argued "that the United States government and the Company's attorneys entered into a conspiracy to fraudulently 'void' the Company's water rights." *Id.* at 1017.

The LRGA court rejected these arguments and dismissed his claims,[5] and the New

---

4 Boyd's complaint refers to himself as an intervenor in the stayed U.S. QTA Case. *See, e.g.,* Compl. ¶ 23. He is not, and never has been. His motions to intervene have been dismissed twice; the second dismissal was affirmed by the Tenth Circuit.

5 Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2023/11/2-24-12-Order-Granting-1-the-US-and-EBIDs-and-2-The-City-of-Las-Cruces-Motons-to-Dismiss-the-Claims-of-the-Estate-of-Nathan-Boyd.pdf (last accessed Apr. 27, 2026).

Mexico Court of Appeals affirmed. The LRGA court found that Boyd failed to state a water right claim because "neither he nor the Company has diverted or distributed irrigation water for more than one hundred years." *Id*. at 1017. The LRGA court and the New Mexico Court of Appeals also ruled that the Company *had* forfeited any water rights by failing to litigate against the United States in *Rio Grande III*. *Id.* at 1017-18. The New Mexico Court of Appeals further held that, if a fraud occurred at all, it was a fraud on the Company by its attorneys, the remedy for which was a malpractice lawsuit a century ago, not reversal of the 1903 decree in *Rio Grande III* today. *Id.* at 1018. Finally, and importantly to the present action, the New Mexico Court of Appeals affirmed that both *Rio Grande III* and the 1997 Court of Federal Claims action constituted res judicata against Boyd. *Id.*

Despite this wholesale rejection of his water right claims, Boyd has continued unsuccessfully to press his claims in other LRGA proceedings. In 2014, the LRGA court denied his request to stay proceedings in Stream System Issue 104, the LRGA proceeding regarding the United States' water rights associated with the Rio Grande Project. *See* Order Denying Pre-1906 Claimants' Motion to Stay Further Proceedings in SS-97-104, *State of New Mexico ex rel. v Elephant Butte Irrigation Dist*., No. CV 96-888, Stream System Issue SS-97-104 (June 18, 2014).[6] In 2017, the LRGA court rejected his motion to intervene as a participant in the ongoing stream system issue regarding the purported pre-1906 claimants, Stream System Issue 107. *See* Order Striking James Scott Boyd's Form B Notice of Intent to Participate, No. CV-96-888,

---

[6] Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2023/11/6-18-14-Order-Denying-Pre-1906-Claimants-Motion-to-Stay-Further-Proceedings-in-SS-97-104.pdf (last accessed Apr. 27, 2026).

Stream System Issue SS-97-104 (Feb. 2, 2017),[7] *aff'd, State ex rel. Off. of State Eng'r v. Boyd*, No. A-1-CA-36291, 2021 WL 2592372, at *1 (N.M. Ct. App. June 24, 2021). Most recently, in 2025, the LRGA court denied his motion to be designated as an indispensable party in those same proceedings, finding once again that "because . . . Boyd does not have a valid right, he does not have an interest to be protected in this adjudication." *See* Ex. A at 4, Dkt. No. 1-1.

Finally, in the ongoing original jurisdiction proceeding in the U.S. Supreme Court regarding the Rio Grande Compact dispute among Texas, New Mexico, Colorado, and the United States, Boyd and several other purported water users moved to intervene and set aside *Rio Grande III*. The then-presiding Special Master assigned by the Supreme Court to conduct trial proceedings in the case determined that Boyd did not meet the high standards for intervention in an original action and recommended denial of his request. *See State of Texas vs. State of New Mexico*, Supreme Court No. 141, Original, Second Interim Report of the Special Master on Motion of Pre-Federal Claimants to Intervene at 54 (Dec. 03, 2019) ("Second Interim Report").[8] The Special Master also separately found that even if he could have satisfied that burden, his "claimed rights are foreclosed as res judicata by the Supreme Court's 1909 judgment affirming the territorial court's grant of a default judgment." *Id.* at 41. The Special Master noted that any collateral attack on the 1909 judgment due to alleged fraud would be difficult to sustain, and even if it could, Boyd "raised this exact argument in the New Mexico state court proceedings and in the Court of Claims," and that "[t]hose recent opinions stand as res judicata for purposes of collaterally attacking the 1909 judgment under a theory of fraud." *Id.* at 44. Even if they were not

---

[7] Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2023/11/Order-Striking-James-Scott-Boyds-Form-B-Notice-of-Intent-to-Participate-filed-2-2-17.pdf (last accessed Apr. 27, 2026).

[8] Accessible at https://www.ca3.uscourts.gov/texas-v-new-mexico-and-colorado-no-141-original, Dkt. No. 302 (last accessed Apr. 27, 2026).

barred by res judicata, the Special Master found that claims of fraud were time barred, because the very latest Boyd could allege that fraud was discovered was the mid-1990s; certainly, "[i]n no event is waiting more than 20 years after discovering purported evidence of fraud a reasonable time to wait before approaching the Court itself to ask that the Court void an earlier judgment." *Id.* at 47. Following receipt of the Second Interim Report, the Supreme Court denied Boyd's motion to intervene. *See* Order List (Jan. 13, 2020).[9]

After more than a century of litigation, Boyd now brings the present action, again seeking to collaterally attack the well-reasoned decisions of the many courts that have considered and rejected his claims.

## II. Legal Standards

### a. Motion to Dismiss

Federal Rule of Civil Procedure 12(b) authorizes defendants to assert certain defenses by motion before filing a responsive pleading, including, *inter alia*, (1) lack of subject matter jurisdiction, and (6) failure to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b). Federal courts are courts of limited jurisdiction, and a plaintiff bears the burden of demonstrating the Court's jurisdiction. *De Baca v. United States*, 399 F. Supp. 3d 1052, 1156 (D.N.M. 2019), *aff'd sub nom. Ohlsen v. United States*, 998 F.3d 1143 (10th Cir. 2021). Rule 12(b)(1) allows two forms of attack: facial, on the sufficiency of the complaint's allegations, or factual, on the actual facts upon which subject matter is based. *Id.* (citing *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). On a facial attack, the court must use the 12(b)(6) standard and presume allegations are true, but when the attack is factual, "a district court may not presume the truthfulness of the complaint's factual allegations" and has wide discretion to consider

---

[9] Accessible at https://www.supremecourt.gov/orders/courtorders/011320zor_4fc5.pdf (last accessed Apr. 27, 2026).

evidence to resolve disputed jurisdictional facts. *Id.* (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). Federal Defendants raise both a facial and a factual challenge.

In order to survive a 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must "nudge his claims across the line from conceivable to plausible . . . the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citation modified). "When assessing plausibility, a plaintiff's allegations are 'read in the context of the entire complaint.'" *Chilcoat v. San Juan Cnty., Utah*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quoting *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020)). Well-pleaded factual allegations are accepted as true, *id.,* but the Court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

In considering a 12(b)(6) motion to dismiss, the Court can consider the four corners of the complaint itself, documents attached to the complaint, documents referred to in the complaint central to the plaintiff's claim where authenticity is not disputed, and matters of which the court can take judicial notice.[10] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

**b. The Takings Clause, Tucker Act, & Little Tucker Act.**

The Constitution's Takings Clause "provides that 'private property' shall not 'be taken for public use, without just compensation.'" *New Mexico Consol. Constr., LLC v. City Council of*

---

[10] Boyd references some, but not all, of the relevant prior litigation in his complaint. The Court may take judicial notice of "the existence of the opinions of other courts" without assuming the truth of the facts recited. *Gilchrist v. Citty*, 71 F. App'x 1, 3 (10th Cir. 2003).

*the City of Santa Fe*, 97 F. Supp. 3d 1287, 1314 (D.N.M. 2015) (quoting U.S. Const. amend. V). A plaintiff who alleges a taking may sue the United States pursuant to two limited waivers of sovereign immunity: the Tucker Act and the Little Tucker Act. The Tucker Act provides that the "Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded ... upon the Constitution." 28 U.S.C. § 1491(a)(1). However, the Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides federal district courts with limited, concurrent jurisdiction with the Court of Federal Claims over "[a]ny other civil action or claim against the United States, not exceeding $10,000 in amount" founded upon, *inter alia*, the Constitution. Put another way, either court could review a claimed taking up to $10,000, but the Court of Federal Claims has "exclusive jurisdiction for claims of unconstitutional taking of private property over $10,000.00 in amount[.]" *Cortez v. EEOC,* 585 F. Supp. 2d 1273, 1288 (D.N.M. 2007).

A Little Tucker Act plaintiff bears the burden "to establish his or her claim does not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act." *Id.*; *see also Colo. Dep't of Highways v. U.S. Dep't of Transp.,* 840 F.2d 753, 755 (10th Cir. 1988) ("A party cannot avoid the exclusive jurisdiction of the Claims Court under the Tucker Act merely by artfully pleading injunctive, declaratory or mandatory relief when the purpose of the suit is to obtain money from the United States in excess of $10,000."); *Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir.2001) ("[A] Little Tucker Act case may proceed in the district court if recovery is limited to $10,000."). Claims under the Tucker Act and Little Tucker Act "must be for monetary relief; [they] cannot be for equitable relief" except in very limited, statutorily enumerated, circumstances. *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 943 (Fed. Cir. 2007).

**c. Rooker-Feldman Doctrine**

The Rooker–Feldman Doctrine "prohibits federal suits that amount to appeals of state-court judgments." *F.D.I.C.,* 778 F. Supp. 2d at 1134. Rooker-Feldman "embodies the principle that federal district courts may not serve as courts of appeal for State courts." *Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033, 1114 (D.N.M. 2023). "It applies in cases where a plaintiff explicitly asks a federal district court 'to modify or set aside a state-court judgment', and in cases where the claims presented to the district court are 'inextricably intertwined' with a State court decision such that 'the District Court is in essence being called upon to review the state court decision.'" *Id.* (quoting *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Trust Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018) (internal citation omitted)).

The Rooker-Feldman Doctrine has four elements: there must be: (1) a state court loser who (2) complains of injuries caused by a state court decision which was (3) finalized before the federal court action was filed and (4) that state court loser must invite the federal court to review and reject a state judgment. *Id.* Where the Rooker-Felman Doctrine applies, the Court lacks subject matter jurisdiction, so a motion to dismiss based upon this doctrine is brought pursuant to Rule 12(b)(1) . *See Kiowa Indian Tribe of Okla. v. Hoover*, 150 F.3d 1163, 1165 (10th Cir. 1998).

**d. Res Judicata**

Res judicata prevents "a party from litigating a legal claim that was or could have been the subject of a previously issued final judgment." *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005). "[T]he doctrine of res judicata provides that when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy,

concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States*, 463 U.S. 110, 129–30 (1983) (citations omitted). In accordance with this principle, a "final 'judgment puts an end to the cause of action, *which cannot again be brought into litigation between the parties upon any ground whatever*.'" *Id*. at 130 (citations omitted) (emphasis added). As the Supreme Court emphasized in *Nevada*, this principle carries particular force relative to settled property interests:

> The policies advanced by the doctrine of *res judicata* perhaps are at their zenith in cases concerning real property, land and water … As this Court explained over a century ago in *Minnesota Co. v. National Co.,* 3 Wall. 332, 18 L.Ed. 42 (1865):
>
> > Where questions arise which affect titles to land it is of great importance to the public that when they are once decided they should no longer be considered open. Such decisions become rules of property, and many titles may be injuriously affected by their change… [W]here courts vacillate and overrule their own decisions ... affecting the title to real property, their decisions are retrospective and may affect titles purchased on the faith of their stability. Doubtful questions on subjects of this nature, when once decided, should be considered no longer doubtful or subject to change.

*Id*. at 129, n.10 (citation modified). Res judicata reflects a simple principle: litigation must come to an end. "By preventing repetitious litigation, application of res judicata avoids unnecessary expense and vexation for parties, conserves judicial resources, and encourages reliance on judicial action." *May v. Parker-Abbott Transfer & Storage, Inc.,* 899 F.2d 1007, 1009 (10th Cir. 1990)

Three elements must be established to apply res judicata: "(1) a final judgment on the merits in a prior action; (2) the identity (i.e., sameness) of parties or their privies in the prior and instant suits; and (3) the identity of the cause of action in both suits." *Watkins v. Genesh, Inc*., 135 F.4th 1224, 1229 (10th Cir. 2025) (citation modified). The Tenth Circuit applies a transactional test for the third element, "under which 'a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence.'" *Id.* at

1229-30 (quoting *Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997)). Under this approach, "a party cannot avoid preclusion by repackaging precluded claims 'under the rubric of slightly different legal theories' where the 'new' and precluded claims stem from the same transaction or occurrence." *Id.* (quoting *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000)).

An exception to res judicata applies where a party did not have a "'full and fair opportunity' to litigate" the claim in the prior action. *MACTEC, Inc*, 427 F.3d at 831. But a full and fair opportunity is a low bar: "[t]his narrow exception applies only where the requirements of due process were not afforded–where a party shows a deficiency that would undermine the fundamental fairness of the original proceedings." *Schueller v. Wells Fargo & Co*., 303 F. Supp. 3d 1171, 1179 (D.N.M. 2018).

A motion to dismiss alleging res judicata is brought pursuant to Rule 12(b)(6) in this circuit. *See*, *e.g.*, *Cory v. Fahlstrom*, 143 F. App'x 84, 86 (10th Cir. 2005).

## III. Argument

The Complaint should be dismissed because the Court lacks subject matter jurisdiction, and because Boyd has failed to state a claim. Subject matter jurisdiction is lacking because the Rooker-Feldman Doctrine, which bars collateral attacks on state court judgments in federal court, applies; because 42 U.S.C. § 1983 and the Fourteenth Amendment to the U.S. Constitution are not directly enforceable against the United States; and because Boyd has failed to invoke the Little Tucker Act's limited grant of jurisdiction. Boyd has further failed to state a claim because the statutes of limitations on his claims have all run; because res judicata bars the serial litigation of Counts I and II, and because judicial takings are not a compensable takings theory.

### a. The Court Lacks Subject Matter Jurisdiction (Fed. R. Civ. P. 12(b)(1)).

**i. The Complaint must be dismissed because the Rooker-Feldman Doctrine Applies.**

Boyd's Complaint, distilled down, is an effort to have the 1903 state court decision in *Rio Grande III*, along with subsequent decisions in the LRGA which have in-part relied upon it, overturned. Because his predecessors were unsuccessful in appealing that 1903 decision, over a century later, Boyd now effectively asks this Court to sit as an appellate tribunal for state court decisions. Under the Rooker-Feldman Doctrine, it cannot. The four elements of Rooker-Feldman are all met by Boyd's complaint. Boyd is: (1) a state court loser in *Rio Grande III* and before the LRGA court; he (2) complains of a century of injuries derived from those judgments; (3) the judgments were rendered and finalized long before this case was filed; and (4) he asks the Court to overturn those decisions.

***First***, Boyd was a losing party in both *Rio Grande III* (through his alleged predecessor) and in the LRGA expedited *inter se* proceeding assessing his water rights. In *Rio Grande III*, his predecessor was deemed to have forfeited any rights to complete an irrigation project on the Rio Grande; that case was litigated to a final judgment in favor of the United States[11] and through the full appellate process. In the LRGA, Boyd's claims to a water right were dismissed; this, too, was litigated through all appeals.

***Second***, Boyd's claimed injuries here derive from the state court judgments or are inextricably intertwined with those judgments. A review count-by-count reveals that Boyd's purported harms all flow from the judgments of New Mexico's courts.

*Count 1* asserts a taking under the Fifth Amendment to the U.S. Constitution. While this

---

11 New Mexico applies "the well-settled rule of law … that a prior default judgment bars a subsequent suit on issues which were, or could have been, determined in the earlier action." *First State Bank v. Muzio*, 1983-NMSC-057, ¶ 9, 100 N.M. 98, 101, *overruled on other grounds by Huntington Nat. Bank v. Sproul*, 1993-NMSC-051, ¶ 9, 116 N.M. 254.

claim is separately barred by res judicata after litigation in the Court of Federal Claims, *see infra* § III(b)(ii), it also fails under the Rooker-Feldman Doctrine because this doctrine bars federal cases where a state court's order purportedly caused the constitutional harm. *See Campbell v. City of Spencer,* 682 F.3d 1278, 1284 (10th Cir. 2012). Indeed, *Campbell* is almost directly on point to Boyd's claims. In that case, a plaintiff's "complaint speaks in terms of actions by the defendants," alleging a taking through "unconstitutionally using Oklahoma's forfeiture procedures." *Id.* However, the Tenth Circuit held that the Rooker-Feldman Doctrine barred the federal court's consideration of the claims, because "the deprivation of property that was allegedly without just compensation or due process was the deprivation ordered by the state court." *Id*. The same principle applies here. Boyd's fundamental allegation is that the forfeiture judgment in *Rio Grande III* was the method by which the United States purportedly carried out a taking. Because there would be no purported taking without the *Rio Grande III* decision, rendered by a state district court, Rooker-Feldman applies. To the extent Boyd alleges that the LRGA court has effectuated a taking, the same principle applies.

*Count II* asserts a due process claim for purported deprivation of "property without due process by failing to provide notice, a fair hearing, or lawful adjudication of vested territorial diversion rights." Compl. ¶ 137, Dkt. No. 1. While it is difficult to associate the allegations in his complaint with a specific Count, it is plain that Count II is a collateral attack on both *Rio Grande III* and the LRGA court's decision dismissing Boyd's claims. As to *Rio Grande III*, Plaintiff complains that the "1903 default forfeiture judgment [was] procured without proper service, notice, or an adjudication on the merits[.]"*Id.* ¶ 13; *see also* ¶ 24. However, Boyd's predecessors raised these very issues with the state district court at the time and were unsuccessful: while Boyd now says that his predecessor was not allowed to respond, *Id*. ¶ 125, the record refutes this

allegation. Both before the state district court and on appeal, Boyd's lawyer contested service, notice, and the entry of a default judgment. The state district court determined that service and notice were proper and that default judgment was warranted, a decision which both the New Mexico Territorial Supreme Court, *see Rio Grande Dam & Irrigation Co*., 85 P. at 398 (citing ¶ 37), and the U.S. Supreme Court, *see Rio Grande III*, affirmed. Fundamentally, New Mexico's courts–and the U.S. Supreme Court–have determined that there *was* notice, a fair hearing, and a lawful adjudication. This Court cannot overrule those decisions. As to the LRGA, Boyd's complaint likewise presents a collateral attack on that proceeding as well. *See, e.g.*, Compl. ¶ 127 (attacking "the LRGA's decades-long reliance on a void 1903 judgement[.]"). Just as this Court lacks authority to review the 1903 *Rio Grande III* decision, it lacks authority to review the LRGA court's decision.

*Count III* alleges "denial of access to courts." But again, this count boils down to an attack on the decisions in *Rio Grande III* and the LRGA. Any plaintiff must properly invoke a court's jurisdiction, with a proper cause of action. Boyd has repeatedly failed to do so, and in cases where he does properly raise claims, has received unfavorable decisions. That the United States has vigorously opposed his unsupported claims in litigation is the lawful approach; Boyd's claims that the opposite is true seeks to contravene the judicial process. While Boyd raises a long list of concerns, they can be summarized as attacks on the *Rio Grande III* decree of forfeiture and the LRGA court's dismissal of his claims to water rights and, after dismissal, assorted LRGA court orders excluding Boyd from further participation in other water right proceedings.

For example, Boyd alleges in Counts III(a) and (b) that unnamed parties have "mischaracterized" his claims and "refus[ed] to adjudicate" his claims to ownership of certain property interests. *Id.* ¶ 139. Boyd makes clear in his complaint that this is a collateral attack on

the LRGA court's dismissal of his water right claims. In his complaint, he states that "[t]he LRGA and the New Mexico Court of Appeals (2023) repeatedly treated Plaintiff's works-ownership claim as a personal water-right claim, thereby evading the dispositive threshold issue – title to and completion of the diversion infrastructure." *Id.* ¶ 25. The Rooker-Feldman Doctrine bars this Court's appellate review of the decisions of New Mexico's courts. This is particularly so when the purported constitutional harm is a direct result of a state court's orders, rather than an action of the Federal Defendants. Boyd has been excluded from participating in certain LRGA proceedings by a state court's orders, in due course after briefing and subject to appeal. To overturn his purported exclusion, the Court would need to overturn a series of state-court orders dating all the way back to the 1903 decree of forfeiture. That decree plainly addressed Boyd's purported works-ownership claim and determined it to have been forfeited.

Similarly, in Count III(c), Boyd alleges that he has been excluded "from evidentiary proceedings through procedural fencing and a fraudulent default." *Id.* ¶ 139. Again, Boyd makes clear in his complaint that this is an attack on a state court order. He states that "[t]he 1903 forfeiture judgment – and the LRGA's reliance on it in [Boyd Exhibit A] are void ab initio . . . [t]o the contrary, exclusion of Plaintiff's claims perpetuates a denial of due process[.]" *Id.* ¶ 67. To overturn this 'exclusion,' the Court would need to overturn at least four state court orders: *Rio Grande III* (affirmed on appeal), the dismissal of Boyd's claims in the LRGA (affirmed on appeal), *see supra* n. 5, the striking of Boyd's notice of intent to participate in Stream System Issue 107 (affirmed on appeal), *see supra* n. 6, and the 2025 participation order, *see* Compl. Ex. A at 4, Dkt. No. 1-1; *see also supra* n. 7. The Rooker-Feldman Doctrine is a clear and categorical bar to this result. The other sub-paragraphs under Count III duplicate this same error and fail for these same reasons.

*Count IV* alleges an equal protection violation triggered by purportedly "favoring EBID . . . over pre-federal vested property rights and by excluding Plaintiff while granting EBID de facto standing." Compl. ¶ 142. While this Count is difficult to interpret on its own, it appears to be a reference to Section VI of the Complaint, captioned "The State Engineer and State Courts' Misclassification of EBID as a Party in Interest." There, Boyd complains that his claims have been denied in the LRGA while other entities' claims have not.[12] *See*, *e.g.*, *id.* ¶¶ 42, 45. This, however, is not a constitutional violation. A water adjudication assesses water right claims over time on a claimant-by-claimant basis. Boyd's claims were resolved early on because *he* sought and was granted an expedited proceeding, not because of any constitutional infirmity in the adjudication. *See State of New Mexico v. Elephant Irrigation Dist., et. al.*, No. CV 96-888, Amended Motion to Set Stream System Issue (Oct. 6, 2008).[13] Even assuming that Boyd had somehow presented evidence of a constitutional violation, the very 'violation' of which he complains was solely triggered by state court orders – exactly the outcome the Rooker-Feldman Doctrine bars.

Finally, *Count V* alleges a 'judicial taking.' While it is not clear that a judicial taking is even a potentially viable claim, *see infra* § III(b)(iii), Boyd states that "[b]y reclassifying . . . property right as mere 'water rights' the Lower Rio Grande Adjudication and Defendants'

---

[12] Boyd's repeated allegations that, e.g., the LRGA "has refused to adjudicate senior diversion-based irrigation rights . . . denying Plaintiff and other pre-federal claimants a neutral forum and due process of law," *see* Compl. ¶ 18, are particularly difficult to understand when Boyd himself was granted an expedited *inter se* proceeding to assess his water right claims at his own request. That proceeding was litigated to a judgment and through appeals. Other purported pre-federal claimants are actively participating in Stream System Issue 107, which will determine whether other alleged surface water rights pre-dating the Lower Rio Grande Project have been extinguished. This apparent contradiction can only be reconciled by a finding that Boyd views any proceeding in which he receives an unfavorable decision as inherently – indeed, constitutionally – unfair.

[13] Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2023/11/10-6-08-Amended-Motion-to-Set-Stream-System-Issue.pdf (last accessed Apr. 27, 2026).

related judicial actions have eliminated established property rights"; and that the "refusal to adjudicate Plaintiff's vested property interests, while reallocating those interests to EBID, the State Engineer, and the Bureau of Reclamation, constitutes an unconstitutional judicial taking." Compl. ¶¶ 144, 145. This claim misinterprets the fundamental nature of the orders Boyd challenges. The LRGA court has not "refused to adjudicate" Boyd's claims; it simply adjudicated that he had no water right claim at all, because to the extent there was ever a water right appropriated, it had been forfeited in the century that it was undisputedly not used. Regardless, a court order dismissing claims that a party disagrees with is not a refusal to adjudicate their claims, and Boyd cannot now resurrect his claim that has been adjudicated as invalid by arguing that the previous court orders misapprehended his arguments. Fundamentally, the purported judicial taking was executed by state-court orders. Tellingly, on Count V, Boyd does not primarily seek just compensation, but instead, an order "restoring his vested diversion interests and prohibiting judicial or administrative reallocation of those rights without just compensation." *Id.* ¶ 146; *see also* Compl*.,* Prayer for Relief ¶ (e) (seeking an order "judicially recogniz[ing] Plaintiff's standing in the [LRGA.]" In other words, Boyd seeks an order from this Court that the state court orders with which he disagrees were incorrect so he can try again before New Mexico's courts, a century later. This Court cannot issue such an order.

***Third***, it cannot be contested that the challenged decisions were rendered before this federal court action was initiated. Indeed, some were initiated over a century prior. The complaint was filed on October 3, 2025. Dkt. No. 1. The state court orders that Boyd attacks range from May of 1903 (*Rio Grande III*) to April 8, 2025 (the LRGA Participation Order attached to the Complaint as Exhibit A). All occurred before October 3, 2025.

***Fourth***, Boyd does not merely reference state court decisions. Instead, he improperly

asks the Court to overturn them. Boyd's complaint repeatedly makes this factor clear on its face. As he notes throughout his complaint, "Plaintiff **challenges the validity** of a 1903 default forfeiture judgment[.]" Compl. ¶ 13 (emphasis added); ¶ 19 (the "1903 case remains tainted"); ¶ 20 ("requires **setting aside** a judgment") (emphasis added); ¶ 22 (the "LRGA perpetuates this fraud"); ¶ 23 (the "LRGA court's order … was grounded on the tainted territorial court 1903 forfeiture"); ¶ 28 (describing the LRGA order dismissing his claim as "misstating" the law); ¶ 64 ("a judgment without jurisdiction is a legal nullity"); ¶ 67 ("[t]he 1903 forfeiture judgment – and the LRGA's reliance on it in Exhibit A (2025) - are void ab initio"). In effect, Boyd asks this Court to sit in appellate review of the 1903 judgment in *Rio Grande III* – itself affirmed by the U.S. Supreme Court – and of LRGA court orders which have in part relied on it. The proper remedy for his complaints was timely appeal, as the Company recognized more than 110 years ago, when it appealed the adverse judgment, and as Boyd has recognized in his multiple trips to the New Mexico appellate courts. Because Counts I-IV are collateral attacks on the 1903 *Rio Grande III* judgment and Count V is a collateral attack on a 2014 LRGA court order, the Court is divested of subject-matter jurisdiction, and this complaint must be dismissed in accordance with the Rooker-Feldman Doctrine.

To the extent that Boyd may argue that this complaint is not barred by the Rooker-Feldman Doctrine because alleged fraud invalidates the 1903 *Rio Grande III* judgment, the argument fails in at least four ways. First, while he gestures at Fed. R. Civ. P. 60(d)(3), *see* Compl. ¶ 13, he in fact seeks to overturn a judgment of a *state* court, not a federal court. While no fraud on any court occurred, to the extent any has been alleged, it was upon the state district court. Such a complaint would need to be directed to New Mexico's courts pursuant to District Court Civil Rule 1-060(B). Second, he cannot again direct such a claim to New Mexico's courts,

however, because he did so unsuccessfully in the LRGA, and it is barred by res judicata, as further explained below. *See also Boyd Est. ex rel. Boyd,* 2015-NMCA-018, ¶ 18, 344 P.3d at 1017 (discussing "Boyd's Claims of Fraud and Conspiracy"). Third, to the extent he had such a claim before the U.S. Supreme Court for an independent fraud on that Court on appeal, he has raised it and lost. Boyd raised such a claim in the proceedings before the Supreme Court in *Texas vs. New Mexico*, No. 141, original. The Special Master recommended rejection of his claims, and the Supreme Court denied him intervention. *See* Second Interim Report. Fourth, to the extent he ever had such a claim in federal court and it survived the proceedings in *Texas vs. New Mexico*, it is now foreclosed by the Supreme Court's recent ruling in *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. for Vista-Pro Auto., LLC*, No. 24-808, 2026 WL 135998, 146 S.Ct. 579 (Jan. 20, 2026) (Mem). In *Coney Island*, the Supreme Court held that the time limit for challenging purportedly void judgments is the "reasonable time" standard found in Rule 60(c)(1). It cannot be said that 123 years is a reasonable time. *Cf.* Second Interim Report at 47 ("In no event is waiting more than 20 years after discovering purported evidence of fraud a reasonable time to wait before approaching the Court itself to ask that the Court void an earlier judgment.").

For all these reasons, Boyd's claims should be dismissed for lack of subject matter jurisdiction under the Rooker-Feldman Doctrine.

#### ii. There is No Statutory Basis for Jurisdiction.

##### 1. 42 U.S.C. § 1983 & the Fourteenth Amendment Do Not Apply Against the United States (Claims II-IV)

Counts II through IV are brought pursuant to two specific provisions: 42 U.S.C. § 1983 ("Section 1983") and the Fourteenth Amendment. *See* Compl. at 48-49, ¶¶ 136-140. However, neither provides a cause of action against the Federal Defendants. Section 1983 provides a cause of action for monetary damages to any person who has their civil rights violated, "under color of

any statute, ordinance, regulation, custom, or usage, of any **State** or Territory or the District of Columbia[.]" Section 1983 (emphasis added). Similarly, the Fourteenth Amendment governs the actions of states: "No **State** shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any **State** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1 (emphasis added). Accordingly, "[b]oth provisions are applicable only to actions by state and local entities, not by the federal government." *Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000); *see also Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (same).

As a sovereign, the United States is immune from suit unless it has specifically waived its immunity, and "[c]ourts lack subject-matter jurisdiction over a claim against the United States for which sovereign immunity has not been waived." *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d 1225, 1232 (10th Cir. 2010). The United States thus "consents to be sued only when Congress unequivocally expresses its intention to waive the government's sovereign immunity in the statutory text." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 599 F.3d 1165, 1187 (10th Cir. 2010). Section 1983 is not such a waiver of sovereign immunity. *See Beals v. U.S. Dep't of Just.*, 460 F. App'x 773, 775 (10th Cir. 2012) (dismissing for lack of subject matter jurisdiction). Because the Complaint contains no allegations that any federal defendant acted under color of state law,[14] the Court lacks subject matter jurisdiction as to the United States for

---

[14] Nor would Section 1983 apply to the extent any federal actor acted under color of federal law. *See Belhomme,* 127 F.3d at 1217 (Section 1983 "does not apply to federal officers acting under color of federal law."). Boyd has not pled *Bivens* claims, and the Court should not presume he intended to do so, but the Complaint is facially insufficient, because such claims "cannot be asserted directly against either the United States or federal officials in their official capacities or against federal agencies." *Smith v. United States*, 561 F.3d 1090, 1093 (10th Cir. 2009).

Claims II-IV.

### iii. **Boyd Has Not Invoked This Court's Little Tucker Act Jurisdiction (Claims I & V).**

A second jurisdictional flaw in Boyd's takings claims (Counts I & V[15]) is his failure to invoke this Court's jurisdiction under the Little Tucker Act. Under that statute, this Court only has subject matter jurisdiction over claims up to $10,000. *See* 28 U.S.C. § 1346(a)(2). While Boyd attempts to bring takings claims seeking just compensation, his complaint does not identify any claimed dollar amount. "A plaintiff attempting to invoke the subject matter of the federal district courts bears the burden to establish his or her claim does not exceed the $10,000.00 jurisdictional limit established by the Little Tucker Act." *Cortez,* 585 F. Supp. 2d at 1288; *see also Roedler*, 255 F.3d at 1351 (Little Tucker Act case can proceed "when each plaintiff waives recovery in excess of $10,000"). Because Boyd has not even attempted to identify the scope of his claims, let alone make clear the claim is less than $10,000 or otherwise waive any claim above that amount, this Court lacks subject matter jurisdiction.

Beyond Boyd's failure to carry his burden to establish subject matter jurisdiction, it is readily apparent from the face of the Complaint that he seeks more than $10,000 and is instead attempting to plead his way around jurisdictional barriers.[16] He states that "[w]hile this Court may be limited in awarding compensation greater than $10,000 … Plaintiff expressly reserves the right to pursue **full** just compensation in the Court of Federal Claims" if he is successful here. Compl. ¶ 132 (emphasis added). Boyd reasons that while this Court is limited in compensation,

---

15 To the extent judicial takings exist as a cognizable cause of action, they, too, would need to be brought against the United States only pursuant to the Tucker or Little Tucker Act, and would be subject to the associated limitations, in addition to the other deficiencies in this claim. *See* discussion, *infra*, at Section III(b)(iii).

16 The only dollar amount identified by Boyd in his complaint is his rejection of a settlement offer in the amount of $10,000. Setting aside Boyd's blatant violation of Federal Rule of Evidence 408, it is apparent that his claim must be for more than $10,000. Compl. ¶ 56.

"it retains jurisdiction to adjudicate title, due process, and civil-rights violations, and to grant declaratory and injunctive relief." *Id.* Boyd's gambit is clear: he was unsuccessful before the Court of Federal Claims, so he seeks to use this Court's limited Little Tucker Act jurisdiction as a hook to ask the Court to overturn prior decisions with which he disagrees and, if successful, he then intends to go back to the Court of Federal Claims to pursue the monetary award greater than $10,000 he actually seeks. The Tucker Act does not allow such procedural maneuvering, which would allow serial litigation of the same takings claim in different courts. Indeed, the Tenth Circuit has expressly disallowed such attempted end-runs around the Tucker Act's jurisdictional requirements. "A party cannot avoid the exclusive jurisdiction of the Claims Court under the Tucker Act merely by artfully pleading injunctive, declaratory or mandatory relief when the purpose of the suit is to obtain money from the United States in excess of $10,000." *Colo. Dep't of Highways*, 840 F.2d at 755.

Additionally, it appears that Boyd seeks monetary damages only as a jurisdictional hook. What he primarily seeks is "declaratory, injunctive, and equitable relief to prevent the continued occupation, transfer, or use of such property interests absent lawful condemnation." Compl. ¶ 135, and "declaratory, injunctive, and equitable relief, restoring his vested diversion interests and prohibiting judicial or administrative reallocation of those rights without just compensation," Compl. ¶ 146. These requests are beyond the Court's power under the Little Tucker Act, which presumptively limits claims under that statute to the grant of monetary relief. The Tucker Act sharply limits what equitable relief is available, and "does not generally confer jurisdiction for actions seeking declaratory or injunctive relief." *Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 999 (Fed. Cir. 2017); *see also Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 490 F.3d at 943 ("In order for a claim to be brought under either the Tucker Act or the Little Tucker Act, the

claim must be for monetary relief; it cannot be for equitable relief, except in very limited circumstances[.]").

Instead, "equitable or other nonmonetary relief" is available "in only three statutorily defined circumstances[.]" *H&M Assocs., LLC v. United States*, 165 Fed. Cl. 174, 184 (2023). None applies here. This is not a bid protest as described in 28 U.S.C. § 1491(b)(1), nor a nonmonetary Contract Disputes Act claim, as described in the last sentence of § 1491(a)(2). The only relief available are those categories specifically enumerated in the first sentence of § 1491(a)(2): "orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." None of those narrow categories could encompass the sweeping relief Boyd seeks, nor would the relief he seeks be necessary "to complete the relief afforded by" a money judgment. *Id.* While Boyd lacks a viable takings claim, if he had one, such a claim could be remedied with monetary damages.

This Court lacks subject matter jurisdiction over Boyd's takings claims by virtue of the jurisdictional limitations of the Little Tucker Act.

**b. Boyd has Failed to State a Claim (Fed. R. Civ. P. 12(b)(6)).**

Because the statute of limitations on all his claims have run, Counts I-IV are barred by res judicata, and judicial takings (Claim V) are not cognizable at all, let alone against the Federal Defendants, the Court should dismiss for failure to state a claim.

**i. The Statutes of Limitation on Boyd's Claims have Run.**

1. **The Tucker Act & Little Tucker Act have a six-year statute of limitations (Counts I & V).**[17]

---

[17] Boyd also references the Quiet Title Act ("QTA"), *see* Compl. ¶ 8, but does not assert any QTA claims. The QTA statute of limitations is twelve years. 28 U.S.C. § 2409a(g). A QTA claim accrues "on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1183 (10th Cir. 2025). To the

"Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" *Rico-Reyes v. New Mexico*, 503 F. Supp. 3d 1055, 1057 (D.N.M. 2020) (citing *Torrez v. Eley*, 378 F. Appx'. 770, 772 (10th Cir. 2010) (citation omitted). Boyd's taking claims are time barred. Pursuant to 28 U.S.C. § 2501, "every claim of which the Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." The Little Tucker Act is subject to a six-year statute of limitations as well. 28 U.S.C. § 2401.[18]

On the face of the Complaint, Boyd's takings claim accrued no later than 1903, in *Rio Grande III*. Boyd identifies three dates in his takings section (Compl. ¶¶ 3-4): a physical taking in December 1896, a regulatory taking when the permit was cancelled by DOI in 1897, and a judicial taking in 1903. He filed this complaint in 2025, 122 years later. Even assuming *arguendo* that a judicial taking exists (it does not), and further assuming *arguendo* that one could have been executed by the LRGA court (it could not), the LRGA decision dismissing Boyd's claims was reached in 2014 and affirmed in 2015, a decade before filing this complaint. Accordingly, even his purported judicial takings claim accrued more than six years before filing and is thus barred by the statute of limitations.

---

extent the forfeiture action in *Rio Grande III* is a 'claim,' Boyd certainly knew no later than 1903, and the QTA statute of limitations has run.

[18] Different courts have held that statutes of limitation are affirmative defenses, which can be waived, or jurisdictional bars not subject to waiver or equitable tolling; the Supreme Court "has long interpreted the court of claims limitations statute as setting forth this second, more absolute, kind of limitations period." *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008). That precedent is controlling on Count I. However, this Circuit has held that the Little Tucker Act's statute of limitation is not jurisdictional. *Chance v. Zinke*, 898 F.3d 1025, 1033 (10th Cir. 2018). For convenience, the United States includes all of its statute of limitations arguments in the 12(b)(6) section of this brief, while maintaining that the statutes of limitations under both the Tucker Act and Little Tucker Act are jurisdictional under Supreme Court precedent.

While Boyd has alleged repeatedly that the *Rio Grande III* forfeiture judgment was somehow fraudulent, *see e.g.,* Compl. ¶ 20, alleged fraud only tolls a statute of limitations when the nature of the purported taking is concealed. *See Othart Dairy Farms, LLC v. Dairy Farmers of Am., Inc*., 720 F. Supp. 3d 1087, 1100 (D.N.M. 2024). Here, Boyd's predecessor was quite aware of the proceedings in *Rio Grande III* and litigated them to the U.S. Supreme Court. There was no barrier to launching a suit in the Court of Federal Claims' predecessor court at the time, so no exception applies.

**2. Section 1983 has a three-year statute of limitations (Counts II-IV).**

In addition to the lack of cognizability of Boyd's Section 1983 claims against Federal Defendants, Counts II through IV are also barred by the statute of limitations. Section 1983 does not have its own statute of limitations. Instead, courts look to state-law personal injury statutes of limitation; accordingly, a Section 1983 claim in New Mexico is subject to a three-year statute of limitations. *See Lymon v. Aramark Corp*., 728 F. Supp. 2d 1207, 1216 (D.N.M. 2010), *aff'd*, 499 F. App'x 771 (10th Cir. 2012). Accrual, however, is analyzed under federal law. *Id*. "In general, under the federal discovery rule, claims accrue and [t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Id.* (alternation in original). To determine the accrual date of Boyd's Section 1983 claims, the Court must "identify the constitutional violation and locate it in time." *Smith v. City of Enid By & Through Enid City Comm'n,* 149 F.3d 1151, 1154 (10th Cir. 1998). Count II alleges that Boyd was deprived of his property through a purported failure of notice, a fair hearing, or lawful adjudication in *Rio Grande III*. Appeals concluded in *Rio Grande III* in 1909. The claim accrued no later than 1909, and the limitations period ran no later than 1912. Counts III ("denial of access to courts") and IV ("equal protection violation" as to treatment of EBID)

primarily derive from the LRGA court's dismissal of Boyds' claims in 2014. Even construed favorably to Boyd at the motion to dismiss stage, his claim could have accrued no later than the conclusion of his appeals in 2015, and the limitations period ran no later than 2018.

ii. **Res Judicata bars Counts I & II.**

Counts I and II are barred by res judicata, which prevents the serial litigation of the same issue. *See supra* § 2(d), *see also Watkins,* 135 F.4th at 1229. Res judicata applies where there was a final judgment on the merits, the parties are the same, and the cause of action is the same, when applying the transactional test. *Id.* Count I was already litigated before the Court of Federal Claims in 1996 and Count II was already litigated before New Mexico's district courts in 1903.

1. **Boyd's Inverse Condemnation Claim (Count I) Was Litigated Before the Court of Federal Claims.**

***The Prior Suit Ended With a Judgment on the Merits***

As discussed *supra* in § 1, Boyd filed a series of takings lawsuits against the United States in 1989, 1993 (two), and 1996. The 1996 action resulted in litigation to a final judgment that his claims were time barred, which is considered a final judgment on the merits. In the 1996 suit, Boyd sought just compensation "as successors in interest to the Capital Stock and vested property rights, *including water rights, diversion dams, irrigating canals and works, contracts of the Dam & Irr. Co.*" *Boyd v. United States*, 1997 U.S. Claims LEXIS 345, at *8 (emphasis added) (citation modified). Boyd further contended that he had experienced a continuing taking of his property, and a continuing violation of his constitutional rights. *Id*. at *8-9. The United States moved to dismiss for lack of subject matter jurisdiction, "asserting that plaintiffs' taking claim [was] time-barred." *Id.* at *9. The court found that Boyd's "cause of action accrued, at the latest, on December 13, 1909" and that his "allegation that the taking has 'continued' [on an ongoing basis to the present day] does not alter that conclusion." *Id.* at *17. Because actions

brought under the Tucker Act are subject to a jurisdictional six-year statute of limitations, *id.* at *10, and Boyd filed eighty-six years later, the Court of Federal Claims found that Boyd had failed to comply with the statute of limitations and dismissed his complaint. *Id.* at *19.

In this circuit, "[a] judgment for failure to comply with the statute of limitations is a judgment on the merits, thereby satisfying element one" of res judicata. *Nwosun,* 124 F.3d at 1257 (citing *Murphy v. Klein Tools, Inc*., 935 F.2d 1127, 1128–29 (10th Cir.1991)).

***The Parties Are Identical***

In the 1996 Court of Federal Claims case, the plaintiffs were Boyd as Administrator of the Estate of Nathan Ellington Boyd, deceased, and Boyd himself. The only named defendant was the United States. In the present action, James Scott Boyd is the only plaintiff, but describes his claims as derived from Dr. Nathan Boyd. Compl. ¶ 18. Boyd names multiple Federal Defendants. However, the Tucker and Little Tucker Acts allow constitutional taking lawsuits only against the United States. *See, e.g.,* 28 U.S.C § 1346 ("Any civil action against the United States…"); 28 U.S.C. § 1491 ("any claim against the United States…"). Boyd's takings claims as to Federal Defendants thus can only run against the United States, not the Federal Defendant agencies or New Mexico parties.[19] Accordingly, the parties here are effectively identical – Boyd and the United States.

***The Identity of the Cause of Action is Identical***

This Circuit "applies the transactional approach to determine what constitutes the same cause of action." *New Mexico ex rel. King v. Cap. One Bank (USA) N.A.,* 980 F. Supp. 2d 1346,

---

[19] To the extent Plaintiff brings his takings claims against any defendants other than the United States, they should be dismissed. The Tucker Act and Little Tucker Act authorize suits only against the United States. While the other defendants could potentially be named in other contexts, they cannot as to the Tucker Act claims. *See, e.g., Moore v. Pub. Defs. Off.*, 76 Fed. Cl. 617, 620 (2007) ("When a plaintiff's complaint names private parties, or local, county, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.").

1354 (D.N.M. 2013). "[A] cause of action includes all claims or legal theories that arise from the same transaction … More specifically, transaction connotes a natural grouping or common nucleus of operative facts.'" *Id*. (citation modified). "It is well settled that parties cannot avoid the preclusive effects of res judicata by dressing up claims already litigated in new legal theories." *Id.*

Boyd's takings claim is clearly the same cause of action as the inverse condemnation claim filed in the 1996 Court of Federal Claims case. As an initial matter, Boyd himself admits as much in the complaint, noting that he "first pursued claims against the United States more than thirty years ago in the U.S. Court of Claims[.]" Compl. ¶ 18. In the 1996 Court of Federal Claims action, Boyd sought compensation for the purported taking of interests in the Lower Rio Grande as "successors in interest to the to the Capital Stock and vested property rights, including water rights, diversion dams, irrigating canals and works, [and] contracts of the [Dam & Irr. Co.]" *Boyd v. United States*, 1997 U.S. Claims LEXIS 345, at *8. In the present action, Boyd alleges that the United States has "taken Plaintiff's property, including vested diversion works, associated infrastructure, and lien interests[.]" Compl. ¶ 134; *see also Id.* ¶ 1 ("seeks to remedy the unlawful seizure and continuing occupation of diversion works[.]").

Importantly, the Little Tucker Act and Tucker Act are not independent grants of jurisdiction; they are partially overlapping waivers of sovereign immunity for just compensation under the Fifth Amendment. The 1996 Court of Federal Claims case thus necessarily encompassed any takings claims Boyd could bring as to the Company. The common nucleus of operative fact in both sets of claims is the litigation between the United States and the Company, culminating in a decision of the U.S. Supreme Court affirming forfeiture. Boyd's predecessor, and Boyd himself, have already litigated these claims, and the Court of Federal Claims

concluded that his claims are time-barred. To the extent that the claims are not entirely identical, Boyd alleges nothing in Count I that could not have been alleged before the Court of Federal Claims. The present complaint is simply an effort to evade the Court of Federal Claims' decision over this count, dressing up the same facts in almost identical theories, just in a new court. The doctrine of res judicata exists for this very reason, and requires dismissal of Count I.

***Boyd had a full and fair opportunity to litigate before the Court of Federal Claims***

The Tenth Circuit has carved out a narrow exception to res judicata where a plaintiff did not have a full and fair opportunity to litigate. "The fairness of the process is determined by examining any procedural limitations, the party's incentive to fully litigate the claim, and whether effective litigation was limited by the nature or relationship of the parties." *Nwosun*, 124 F.3d at 1257–58. While Boyd alleges that his predecessors did not have a full and fair opportunity in *Rio Grande III* (an allegation without merit), the operative analysis concerning Boyd's inverse condemnation claim is whether he himself had a full and fair opportunity to litigate it in the Court of Federal Claims. There is no allegation in the complaint that he did not. He was represented by counsel, engaged fully in briefing the motion to dismiss which concluded the case, and was certainly incentivized to pursue the claim. His failure to gain a Congressional reference waiving the statute of limitations rendered it his final opportunity at compensation. Accordingly, no res judicata exception applies, and Count I is barred by the Court of Federal Claims' judgment in the 1996 suit.

**2. Boyd's Due Process Claim (Count II) Must Be Dismissed, Because It Was Already Litigated and Decided in *Rio Grande III.***

In Count II, Boyd claims that "Defendants … deprived Plaintiff of property without due process by failing to provide notice, a fair hearing, or lawful adjudication of vested territorial

rights." Compl. ¶ 137. Each of these issues has already been litigated and conclusively determined, and res judicata applies.

First, as to "notice" and a "fair hearing," Boyd raises a panoply of complaints about purported problems with the forfeiture litigation to which his predecessors were joined. *See, e.g.* Compl. ¶¶ 62-63, 137. What Boyd fails to acknowledge is that his predecessors have already litigated this issue and were unsuccessful. After the state district court entered a default as to Boyd's predecessors, "a motion was filed by counsel for appellants… to vacate and set aside the order of April 7, 1903, allowing the supplemental complaint to be filed; to open the default; to vacate and set aside the decree and amended decrees of the court, and for permission to file answer which was tendered with said motion." *Rio Grande Dam & Irr. Co*., 85 P. at 395 (citing ¶ 6). The state district court rejected their request, finding that when the court was in session, no special notice was required; instead, notice was required only for "hearings in vacation." *Id.,* at 396. Further, the court noted that the supplemental complaint was served upon counsel of record for Boyd's predecessors on the day it was filed; "Mr. [Nathaniel] Boyd in his affidavit admits Mr. A. B. Fall and Mr. W. A. Hawkins were attorneys of record for appellants at the time the supplemental complaint was filed[.]" *Id.* "Attorneys of record are presumed to be present during terms of court wherein their causes are pending, and in contemplation of law chargeable with notice of all proceedings transpiring in open court in causes wherein they are such attorneys." *Id.* On appeal, the New Mexico Territorial Supreme Court affirmed that the state trial court was "vested with discretion" as to notice, and the filing of the supplemental complaint was appropriate. *Id.*

Not only did Boyd's predecessors appeal this ruling to the New Mexico Territorial Supreme Court, but they also appealed to the U.S. Supreme Court, which noted that "[u]pon the

question of the diligence or want of diligence of the parties, it may be said that the supplemental complaint was tendered at a time when the court was open; the leave to file was given in open court; and the defendants' attorney was served with a copy of that complaint on the very day it was tendered and filed." *Rio Grande* III, 215 U.S. at 276. The contention that Boyd's predecessors did not receive sufficient notice of the proceedings is without merit and was litigated in that very proceeding.

Long after the proceedings regarding the original forfeiture, Mr. Boyd also litigated his claims regarding purported vested territorial diversion rights in a series of other venues. As described *supra* in § 1, Boyd raised those claims in four different takings lawsuits. The Court of Federal Claims found that his claims were time-barred. In the LRGA, the court decreed that Mr. Boyd held no water right. As the LRGA Court recently explained in barring Mr. Boyd's participation in LRGA Stream System Issue 107, the Court addressed Mr. Boyd's water right claims asserted as the successor of Nathan Boyd in an expedited *inter se* proceeding. *See* Compl. Ex. A at 1-4, Dkt. No. 1-1. The LRGA court held that Boyd "did not state a cognizable claim to water rights[.]" *Id.* at 1. He appealed, and the New Mexico Court of Appeals affirmed. *See Boyd Est. ex rel. Boyd v. United States*, 344 P.3d at 1014. The New Mexico Supreme Court rejected his appeal. *See Boyd Est. ex rel. Boyd,* 345 P.3d 341 (N.M. 2015) (table).

Boyd's predecessors received notice of the forfeiture proceeding, Boyd received full and fair opportunity to litigate his takings claims before the Court of Federal Claims, and Boyd received a full fair opportunity to litigate his water right claims in the Lower Rio Grande Adjudication. Accordingly, Count II is barred by res judicata.

**iii. Boyd's Judicial Takings Claim (Count V) Fails to State a Claim.**

In Count V, Boyd asserts that the judicial branch has effectuated a taking. This claim

fails for three reasons: (1) judicial takings have not been recognized as a cause of action, (2) he has failed to name the judicial bodies he attacks as defendants, and (3) he has not identified a judicial taking.

**1. Judicial Takings Are Not Cognizable.**

For his judicial takings claim, Boyd cites only *Stop the Beach Renourishment, Inc. v. Florida Department of Environmental Protection*, 560 U.S. 702 (2010), which purportedly created judicial takings as a compensable takings theory. Boyd fails to fully acknowledge that the portion of *Stop the Beach* that discusses whether a judicial taking can occur was a four-Justice plurality opinion, which is not binding on this Court. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987) ("As the plurality opinion … did not represent the views of a majority of the Court, we are not bound by its reasoning."). "The justices . . . did not agree on the definition of a judicial taking, or even whether judicial takings claims are cognizable in federal court." *Petro-Hunt, L.L.C. v. United States*, 126 Fed. Cl. 367, 379 (2016), *aff'd*, 862 F.3d 1370 (Fed. Cir. 2017). Beyond the non-binding plurality opinion in *Stop the Beach*, Boyd has identified no authority in this circuit–or indeed, anywhere–recognizing a judicial taking as a cognizable cause of action. Boyd's threadbare allegations should not be the first.

2. **The United States Did Not Engage in Judicial Activity.**

Assuming *arguendo* that a judicial taking could be cognizable, alleged judicial takings by state courts are not cognizable claims against the United States. It is axiomatic that a judicial taking would arise from the actions of a judicial entity. In this case, Boyd apparently alleges the actions of the LRGA court have caused such a taking. But Fifth Amendment claims against the United States "'must be predicated on actions undertaken by the United States,' not third parties such as a tribe, a foreign sovereign, or a local government." *Berry v. United States*, 159 Fed. Cl.

844, 848 (2022), *aff'd*, No. 2022-2031, 2024 WL 852819 (Fed. Cir. Feb. 29, 2024). "Courts have occasionally recognized third-party takings claims, but only where the United States induces a third party to 'act as the government's agent or the government's influence over the third party was coercive rather than merely persuasive.'" *Id.* (citation modified) (quoting *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1154 (Fed. Cir. 2014) (collecting cases)).

There is no plausible allegation that a federal court has caused a taking of Boyd's property, or that the LRGA court did so as an agent of or because of coercion by the United States. At most, Boyd alleges that the purported judicial taking arises from the action of the LRGA court "and Defendants' related judicial actions." Compl. ¶ 144. While it is not clear what Boyd means by "related judicial actions," he complains that his "vested diversion-based property rights" were "reclassif[ied]" as "mere 'water rights.'" *Id.* He apparently refers solely to court filings in that proceeding. As a practical matter, this allegation of 'reclassification' is entirely unfounded. The LRGA is an adjudication of water rights. Boyd himself filed a "Statement of Claims" describing repeatedly his five "water right claims." *See State of New Mexico ex. rel. v. Elephant Butte Irrigation Dist., et al.,* No. CV 96-888, Statement of Claims by the Nathan E. Boyd Estate, ¶¶ 1-5 (Mar. 4, 2011).[20] That the United States opposed his claims as water rights claims in briefing, and that his water right claims were eventually dismissed, does not rise even close to the level of a 'coercive influence' over the LRGA court. Any such claim – while meritless – would need to be directed against the LRGA court, rather than the United States. In short, because Boyd does not plausibly allege any federal actions capable of supporting a judicial takings claim even if cognizable, the Court should dismiss it on this ground as well.

---

[20] Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2025/05/RN-9702413.pdf. This filing clearly belies Boyd's incendiary allegation that "Boyd has never asserted a personal water right … [t]o say so is misrepresentation of the record proper and fraud upon the court." Compl. ¶ 35.

### 3. Even under the *Stop the Beach* plurality rule, Boyd fails to state a plausible claim for a judicial taking.

As noted above, the United States disputes the notion of a judicial takings claim. But even if such a claim could exist, along the lines of the non-binding plurality's view in *Stop the Beach*, Boyd's claim still fails under Rule 12(b)(6). That plurality set out a possible test for a judicial taking: "[i]f a legislature or a court declares that what was once an established right of private property no longer exists, it has taken that property, no less than if the State had physically appropriated it or destroyed its value by regulation." 560 U.S. at 715.

Initially, courts have the authority to declare property interests to have terminated by operation of law in a variety of contexts. For instance, the rights-of-way granted to the Company were conditional and subject to forfeiture, and in New Mexico, water rights are never absolute; they are subject to termination for non-use under the doctrines of forfeiture and abandonment.[21] *See* N.M. STAT. ANN. § 72-5-28. Such a declaration as to a conditional property right would not be amenable to a judicial taking, if such a cause of action existed, because they could not be considered established. To conclude that a declaration of forfeiture or abandonment as to a conditional right subject to forfeiture or abandonment is a judicial taking is to effectively divest the courts of their jurisdiction to make such determinations at all. That is not a viable outcome.

Even if this overly broad rule were applied, Boyd pleads no facts showing that a court has declared property he held to no longer exist. Here, the statute under which the Company was granted a right-of-way included a forfeiture provision. *See* General Revision Act, 26 Stat. 1095, 1102 (1891) ("…the rights herein granted shall be forfeited as to any uncompleted section of

---

[21] Water rights are usufructuary rights to use water, rather than the ownership of the water itself, which is owned by the people of that state. New Mexico, like many western states, has forfeiture provisions which automatically reverts water rights to the public if they are not used. *See* N.M. STAT. ANN. § 72-5-28. The same rule applied at the time of, e.g., *Rio Grande III*. *See Hagerman Irr. Co. v. McMurry,* 1911-NMSC-021, ¶ 4, 16 N.M. 172.

said canal, ditch, or reservoir[.]"). The court in *Rio Grande III*, in implementing this provision, determined that "[D]efendants have not completed its said reservoir or said ditch, or any section thereof, within five years after the location of the said reservoir and its said ditch line" and accordingly terminated the right-of-way. *Rio Grande III,* 215 U.S. at 270. The New Mexico District Court did not declare that an *established* right of private property did not exist. It declared that a *conditional* right had not vested, and terminated the right-of-way, in accordance with statute. Even if Boyd's broad reading of the plurality in *Stop the Beach* were binding precedent, Boyd still would not have a colorable claim to a judicial taking.

As to the LRGA, he fares no better. He describes that the "two most recent LRGA orders addressing Plaintiff's works claims (Exs. A & B) constitute inverse condemnation … and violate the Fifth Amendment." Compl. ¶ 33. It is necessary to briefly parse Boyd's claims to understand why no judicial taking has occurred. Boyd now states that he "does not assert a personal water right subject to state regulation, but a real property interest in completed diversion and irrigation infrastructure[.]"*Id.* at ¶ 100. He alleges that the LRGA court's purported failure to acknowledge his claim, which he now asserts is not a water right claim, constitutes a judicial taking. His claims fail in either scenario. If he was claiming a water right, as he did in the LRGA proceeding but now disavows, the Court properly found that any water rights the Company may have appropriated have not survived to the present day under New Mexico's generally applicable forfeiture statute. As the LRGA court noted, the inquiry was not whether the Company built anything in the 1890s, but rather, "whether the Boyd estate can legally assert a water right in this adjudication" because "in New Mexico, adjudications of water rights confirm only currently existing rights to use water." Order Granting Motion to Dismiss, *State of New Mexico ex rel. v. Elephant Butte Irrigation Dist., et al.,* No. CV 96-888, Case No. RN-97-2413 (Feb. 24, 2012), at

8.[22] The LRGA simply is not an adjudication of water rights only as they may have existed in 1895, and it may properly consider whether subsequent non-use of a claimed water right resulted in its forfeiture or abandonment. On the other hand, if Boyd's water right claims were in fact claims to some other type of property interest, the LRGA court would not have had authority to confirm or deny the existence of such rights; *Rio Grande III* had already conclusively determined long ago such rights do not exist. The LRGA court's jurisdiction is instead limited to adjudicating water rights claims. Accordingly, the LRGA court *could not* have divested him of such property rights and necessarily did not effectuate a taking of any such property rights.

## IV. Conclusion

Boyd's complaint should be dismissed. The Court lacks subject matter jurisdiction, because Boyd has launched an inappropriate collateral attack on state court judgments, which is barred by the Rooker-Feldman doctrine; because his civil rights claims cannot run against the United States, and because he has not invoked a waiver of sovereign immunity to bring his takings claims. He has further failed to state a claim because the statutes of limitations on his claims have all run; because res judicata bars the serial litigation of Counts I and II, and because judicial takings are not a compensable takings theory and, in any event, the United States has taken no judicial action.

* * *

Dated: April 27, 2026

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

***/s/ Mark J. Widerschein***

[22] Accessible at https://lrgadjudication.nmcourts.gov/wp-content/uploads/sites/40/2023/11/2-24-12-Order-Granting-1-the-US-and-EBIDs-and-2-The-City-of-Las-Cruces-Motons-to-Dismiss-the-Claims-of-the-Estate-of-Nathan-Boyd.pdf (last accessed Apr. 27).

Mark Widerschein, Trial Attorney
Katharine Laubach, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Mark.Widerschein@usdoj.gov
Katharine.Laubach@usdoj.gov
*Counsel for Defendants*