**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JAMES SCOTT BOYD,

Plaintiff,

v.

UNITED STATES OF AMERICA, *et al.*,

Defendants.

Case No. 2:25-cv-00964-JB-DLM

**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

**REPLY IN SUPPORT**

The Court should dismiss Boyd's complaint. As the United States has shown in its Motion to Dismiss, Dkt. No. 52, the Court lacks subject matter jurisdiction because the Rooker-Feldman Doctrine applies, Boyd has failed to invoke the Court's Little Tucker Act jurisdiction, and his claims under 42 U.S.C. § 1983 and the Fourteenth Amendment do not run against the United States. Even if the Court had subject matter jurisdiction, Boyd has failed to state a redressable claim because Counts I & II are barred by res judicata, the statutes of limitations on all claims have run, and Count V is not cognizable. Boyd's Response, Dkt. No. 55, (the "Resp.") does nothing to resolve this panoply of jurisdictional and doctrinal flaws. Instead, Boyd handwaves threshold jurisdictional questions as unnecessary to resolve and belatedly attempts to change the basis by which he asserts the Court has jurisdiction by arguing a new ultra vires claim found nowhere in his complaint. This is patently insufficient, and dismissal is warranted.

**I. Argument**

**a. The Rooker-Feldman Doctrine Applies.**

The Rooker-Feldman Doctrine applies because Boyd both attacks state court judgments – that of New Mexico's Third Judicial District in *Rio Grande III*[1] and the LRGA's dismissal of his water right claims – head on, and because his federal claims are "inextricably intertwined" with that state court judgment. *See Pueblo of Pojoaque v. Biedscheid*, 689 F. Supp. 3d 1033, 1114 (D.N.M. 2023). While Boyd's complaint is clear that he seeks to overturn state court decisions, *see* U.S. Motion to Dismiss, Dkt. No. 52, at 16-23 ("U.S. Mot."), he now suggests that his claims can survive because he also seeks to go beyond just challenging the state court decisions. He

[1] This brief uses abbreviations for defined terms as stated in the memorandum in support of the U.S. Motion to Dismiss.

specifically argues that his "claims are independent because no court has ever adjudicated" a set of ancillary issues purportedly not addressed in *Rio Grande III* or the LRGA. Resp. at 6. This, however, is not responsive to the United States' argument, or to the limitations imposed by Rooker-Feldman.

Rooker-Feldman bars the entire suit because Boyd asks this Court to determine that the New Mexico state court reached its decision improperly, and because his entire chain of purported injury relies on *Rio Grande III*. As the Tenth Circuit has explained, "[a]ppellate review —the type of judicial action barred by Rooker–Feldman—consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with law." *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012). That is exactly what Boyd seeks. He asks the Court to find that *Rio Grande III* "relied upon an unconstitutional and ultra vires expansion" of a law, Resp. at 5, that the case "exceeded both the jurisdictional scope and mandate limitations of the original navigation proceedings," *Id*. at 10, and most drastically, that "the proceeding lacked indispensable parties, lacked evidentiary adjudication, and proceeded without meaningful constitutional review of the property interests at issue." *Id*. at 12. A claim is barred by Rooker-Feldman if "an element of the claim is that the judgment was wrongful," even if the lawsuit also references and attacks the activities of other parties in relation to the court order. *Campbell*, 682 F.3d at 1284. While Boyd couches his arguments in the actions of the Federal Defendants over a century ago, his case is inextricably intertwined with his improper collateral attack on *Rio Grande III.* The Rooker-Feldman Doctrine accordingly requires dismissal.

**b. Plaintiff has not Plead an Ultra Vires Claim.**

Boyd's non-takings claims are fatally flawed because they are brought pursuant to the

Fourteenth Amendment and Section 1983, which do not run against the United States. *See* U.S. Mot. at 23-24. In his response, Boyd now belatedly argues that the United States "incorrectly characterize[s] Plaintiff's constitutional claims as though they arise solely under 42 U.S.C. § 1983 or the Fourteenth Amendment," but instead, that they "arise directly under the Fifth Amendment, federal due process principles, and longstanding doctrines permitting *judicial review of ultra vires federal conduct*." Resp. at 7 (emphasis added). This argument is unavailing, and Boyd's blatant mischaracterization of his own complaint comes too late. The jurisdictional question for the Court is whether Boyd has properly identified a vehicle to put his claims before the Court. He has not. Boyd's Complaint, Dkt. No. 1, provides the alleged jurisdictional basis for his suit. His five counts cite two constitutional provisions and two statutory waivers of sovereign immunity: the Fifth Amendment (Counts I & V), the Fourteenth Amendment (Counts II, III, IV, and V), Section 1983 (Counts II, III, IV), and the Little Tucker Act (Count I). While the Tucker and Little Tucker Acts provide a limited waiver of the United States' sovereign immunity for Fifth Amendment claims, Section 1983 does not for Fourteenth Amendment claims.

It is black letter law that as a sovereign, the United States and its agencies are immune from suit, absent a clear waiver of that immunity. *See Wyoming v. United States*, 279 F.3d 1214, 1225 (10th Cir. 2002). This bar is jurisdictional. *Id.* Put another way, there is no stand-alone right to sue the United States for purported constitutional violations.[2] Instead, a plaintiff must utilize one of the statutory waivers of immunity Congress has expressly created and proceed strictly within the limitations created by those waivers. That is how Boyd sought to proceed in his

[2] The Supreme Court has created narrow non-statutory exceptions to this rule for certain claims of ultra vires action and in, *e.g.,* use of force cases which clearly do not apply here. *See, e.g., Rowland v. Matevousian,* 121 F.4th 1237, 1242 (10th Cir. 2024) (describing the *Bivens* exceptions, and noting that "[t]he Supreme Court has repeatedly emphasized that private rights of action for constitutional claims are disfavored."); *see also* U.S. Mot. at 26-27.

complaint, albeit in a legally deficient manner. He identified purported violations of the Takings Clause of the Fifth Amendment and brought his claims under the Little Tucker Act, and purported violations of the Fourteenth Amendment, which he brought under Section 1983. However, Boyd is unable to surmount the limitations in those statutes: the Little Tucker Act is strictly limited to claims for $10,000 or less and a statute of limitations of six years, and Section 1983 does not operate against federal entities at all.

Missing from that list of jurisdictional bases is an ultra vires claim. Only now, in his response, does Boyd tacitly acknowledge that his claims are barred by the statutes on which he expressly relied. He attempts to rescue his claims as "independently cognizable under article III jurisdiction and longstanding ultra vires review doctrines." Resp. at 8. The first can be easily disposed of: "Article III does not grant individual rights, but rather vests the judicial power of the United States in a specific branch of government." *United States v. Garcia*, 936 F.3d 1128, 1141 (10th Cir. 2019). As to ultra vires review, Boyd did not plead an ultra vires claim in his complaint and has instead raised it for the first time in his Response. Thus, the Court should not consider it at all. *See, e.g., Boyer v. Bd. of Cnty. Comm'rs of Cnty. of Johnson Cnty.*, 922 F. Supp. 476, 482 (D. Kan. 1996), *aff'd sub nom. Boyer v. Johnson Cnty. Bd. of Cnty. Comm'rs*, 108 F.3d 1388 (10th Cir. 1997) ("It is inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time").

While the Court should not consider a new cause of action not stated in the complaint, to the extent the Court is inclined to consider the purported new claim as a request to amend the complaint, *see e.g., Ortiz v. New Mexico*, 550 F. Supp. 3d 1020, 1077 (D.N.M. 2021), this request should be denied as futile. In this Circuit, "a proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *United States ex rel. Barrick v. Parker-*

*Migliorini Int'l, LLC*, 878 F.3d 1224, 1230 (10th Cir. 2017) (citation modified). Boyd cannot sustain an ultra vires claim as a matter of law, and thus any amendment to assert this claim would be subject to dismissal.

The Supreme Court has "strictly limited nonstatutory ultra vires review[.]" *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025). Ultra vires review is a "Hail Mary pass – and in court as in football, the attempt rarely succeeds." *Id.* (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)). Ultra vires review is available only where a government actor has "taken action entirely in excess of its delegated powers and contrary to a *specific prohibition* in a statute." *Id.* (emphasis in original). Further, it is "unavailable if, as is usually the case, a statutory review scheme provides aggrieved persons 'with a meaningful and adequate opportunity for judicial review[.]'" *Id.* (quoting *Bd. of Governors, Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991)).

Boyd generally alleges purported violations of the Fifth and Fourteenth Amendments but fails to identify the "specific prohibition" at issue in either claim, let alone how that provision was violated or a specific government actor who purportedly acted ultra vires. Regardless, even under an ultra vires theory, because the United States is not bound by the Fourteenth Amendment, it cannot violate it. *See Dry v. United States*, 235 F.3d 1249, 1255 (10th Cir. 2000). Accordingly, Boyd's Fourteenth Amendment claims are unavailing, whether under Section 1983 or ultra vires review. As to the Fifth Amendment takings claims, "ultra vires conduct cannot give rise to a Fifth Amendment taking." *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998). As the Federal Circuit has explained:

> A compensable taking arises only if the government action in question is authorized . . . If the government action is unauthorized, the acts of defendant's officers may be enjoinable, but they do not constitute taking effective to vest some kind of title in the government and entitlement to just compensation in the owner or former owner."

*Del-Rio Drilling Programs, Inc.*, 146 F.3d at 1362 (citation modified). Further, as to the takings claims, ultra vires review is unavailable because a statutory review scheme plainly was, and is, available. Boyd's predecessors could have pled statutory claims for the purported Fifth Amendment taking raised by Boyd through the long-established Tucker Act and Little Tucker Act scheme.[3] Boyd himself has brought a series of takings actions in the Court of Federal Claims. That Boyd's predecessors first chose not to bring takings claims within the statute of limitations and Boyd himself was later unsuccessful does not render ultra vires review available.

**c. The Tucker and Little Tucker Acts Require Dismissal.**

Boyd does not directly respond to the United States' argument that he has not invoked this Court's limited Little Tucker Act jurisdiction. Indeed, Boyd still has not stated that he seeks less than $10,000, which is a jurisdictional requirement. Instead, he takes the astonishing position that it is the United States which "improperly assumes the existence of a compensable taking[.]" Resp. at 8. It is Boyd who has alleged that the United States engaged in a taking and sought compensation. If Boyd himself questions whether a taking occurred, that is all the more reason that the Court should dismiss this action.

However, a careful review of Boyd's arguments makes clear his gambit. Boyd does not seek just compensation for a Fifth Amendment taking. Instead, he attempts to manipulate the Court's limited Little Tucker Act jurisdiction – which allows only a monetary award up to $10,000 – in pursuit of his real goal: "Article III determinations concerning jurisdiction, property ownership, due process, and the validity of federal action[.]" Resp. at 9. *See* U.S. Mot. at 25-27. Even more bafflingly, he argues that "such relief is equitable and specific in nature and is not

3 The original United States Court of Claims was created in 1885 and the Tucker Act was passed in 1887, well before any relevant events.

transformed into a Tucker Act damages claim merely because it may have monetary consequences."[4] *Id.* Boyd may not muddy the waters away from his actual claims in an effort to manufacture a jurisdictional hook for the unsupported factual determinations that he seeks.

Boyd is limited to the claims in his complaint, none of which provide a cognizable waiver of sovereign immunity for the equitable relief he seeks. The only counts Boyd brought which could possibly run against the United States – Counts I & V – are clearly Fifth Amendment takings claims. Count I alleges that the United States has "unlawfully taken Plaintiff's property . . . without just compensation in violation of the Fifth Amendment[.]" Compl. at 48. Count V similarly argues that the courts have "eliminated established property rights without compensation" and seeks "just compensation." Compl. at 50. The only remedy for a purported taking is just compensation, not equitable relief, *see* U.S. Mot. at 12; 26-27, and the Tucker and Little Tucker Acts provide the sole waivers of sovereign immunity for vindicating a purported Fifth Amendment takings claim against the United States. *See id.* at 11-12. If Boyd now disclaims just compensation entirely, that provides all the more reason for the Court to dismiss.

Fundamentally, Boyd cannot evade the limitations imposed on a Tucker Act plaintiff. His argument underlines the fatal flaw with the complaint: federal courts are courts of limited jurisdiction. There is no blanket right to generically "challenge[] the constitutional and statutory validity" of government actions or to have a court opine on questions you raise; instead, plaintiff bears the burden of showing the Court's jurisdiction by demonstrating a waiver of sovereign immunity allowing the suit. *See, e.g., Ascot Dinner Theatre, Ltd. v. SBA*, 887 F.2d 1024, 1031

---

[4] Boyd misstates the statutory and constitutional scheme. It is not that he has a "Tucker Act damages claim," Resp. at 9, but instead, that he has a Fifth Amendment Takings Clause claim which can only be vindicated, if proven, with just compensation pursuant to the Tucker or Little Tucker Act.

(10th Cir. 1989) ("However desirable a direct remedy against the government might be as a substitute for individual official liability, the sovereign still remains immune to suit." (citation modified)). Where a plaintiff alleges a taking, the Tucker Act or Little Tucker Act provide that waiver. Where a plaintiff alleges different violations, they must identify different grants of jurisdiction and waivers of sovereign immunity. Boyd has not done so. His Fourteenth Amendment claims facially cannot run against the United States, and his Fifth Amendment claims are jurisdictionally limited to a request for just compensation, notwithstanding his unfounded attempts to expand beyond this relief. In light of the jurisdictional $10,000 limit which Plaintiff has not met his burden on, and the running of the six-year statute of limitation, dismissal with prejudice is required.

**d. The Statutes of Limitation have all Run.**

Boyd does not contest that the relevant limitations periods for his takings claim is six years and has long since run. Instead, he argues that he alleges "continuing injury arising from ongoing governmental reliance upon proceedings alleged to be void for lack of jurisdiction and due process." Resp. at 10. Further, he argues that the Court must assume his allegations are true at this stage. *Id.* This argument is unavailing.

As an initial matter, while the Court must assume the truth of well-pleaded facts, it does not need to accept legal conclusions couched as facts in the complaint as true. *See Dahn v. Amedei,* 867 F.3d 1178, 1185 (10th Cir. 2017); *see also Dias v. City & Cnty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) ("A complaint will survive dismissal only if it alleges a plausible claim for relief—that is, the factual allegations must be enough to raise a right to relief above the speculative level." (citation modified)). Plaintiff asks the Court to take a series of legal conclusions as true: "that prior proceedings were conducted without subject-matter jurisdiction,

without adjudication of the relevant property interests, without indispensable parties, and without constitutional due process." Resp. at 9. Then, on top of that, he stacks an unsupported and threadbare allegation of a century of conspiracy. None of those are well-pleaded factual allegations, and the Court should not presume their truth.

Regardless, however, Boyd's 'ongoing harm' theory is both barred by res judicata and legally insufficient. Boyd has already raised his continuing taking theory in the 1996 Court of Federal Claims case. There, the Court of Federal Claims found that Boyd's taking claim was time-barred under the six-year statute of limitations because "it is quite clear that any alleged taking by defendant occurred, at the latest, on December 13, 1909, the date of the final Supreme Court decision in the case involving the" Company. *Boyd v. United States*, 1997 U.S. Claims LEXIS 345, *15 (Fed. Cl. April 21, 1997). The court specifically rejected Boyd's argument that "defendant's actions constitute a continual taking of plaintiffs' property rights, and this continual taking extends to the present date." *Id.* at *9. The court found that while *United States v. Dickinson*, 331 U.S. 745 (1947) did allow a defendant to "postpone filing suit until the nature and extent of the taking is clear," it did not allow them to "wait to bring a cause of action 'until any possibility of further damage ha[s] been removed.'" *Id.* at *16 (quoting *Columbia Basin Orchard v. United States*, 88 F. Supp. 738, 739 (Ct. Cl. 1950). As such, the court determined Boyd's "cause of action accrued, at the latest, on December 13, 1909, the date when all the events which fixed defendant's alleged liability occurred and plaintiffs were, or should have been, aware of their existence." *Boyd*, 1997 U.S. Claims LEXIS 345, *17. Accordingly, Boyd's attempt to relitigate his continuing taking theory is barred by res judicata.

Even if it were not barred by res judicata, the continual taking doctrine is not well-matched to Boyd's factual allegations. That doctrine applies only where a plaintiff's takings

claims are "inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997). Here, they are clearly not. Boyd alleges in his complaint that the United States took possession of his predecessor's property interests somewhere in the period of 1896-1909. Compl. ¶¶ 3-4. That he alleges that the United States has continued in possession until today does not trigger the continual taking doctrine. As a practical matter, were that the case, the six-year statutes of limitation in the Tucker and Little Tucker Acts would become dead letter. Instead, as the Court of Federal Claims properly determined, the six-year limitations period began running no later than 1909 and thus ended no later than 1915 – more than 110 years ago. The Court of Federal Claims properly found that Boyd's takings claims are barred by the statute of limitations, and this Court should as well.

**e. Res Judicata Applies.**

Boyd seeks to argue that res judicata does not apply in light of a purported requirement that an issue be "actually litigated." Resp. at 10. This is not the correct standard for res judicata. Boyd has incorrectly conflated collateral estoppel (sometimes called issue preclusion) and res judicata (sometimes called claim preclusion). The United States' Motion invokes res judicata, not issue preclusion, and the 'actually litigated' requirement does not apply.

The doctrines of res judicata and issue preclusion have important differences. As the Supreme Court has explained:

> Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

*Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citation omitted). Claim preclusion thus

prevents the relitigation of a claim, while issue preclusion prevents the relitigation of a determination of fact or law even when related to a different claim. Here, the United States asserts res judicata applies because Boyd is bringing claims which have already been litigated.

The Tenth Circuit has been clear that there is no requirement that an issue have been actually litigated for res judicata to apply, because this Circuit applies the transactional test for res judicata. *See Watkins v. Genesh, Inc.,* 135 F.4th 1224, 1229 (10th Cir. 2025). Under the transactional test, a "cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence. *All claims arising out of the transaction must therefore be presented in one suit or be barred from subsequent litigation*." *Nwosun v. Gen. Mills Restaurants, Inc.,* 124 F.3d 1255, 1257 (10th Cir. 1997) (emphasis added). Indeed, it would be impossible to reconcile an 'actually litigated' requirement with a test that bars all claims in subsequent litigation, even if they weren't raised.

Boyd's remaining arguments in response are unavailing. He states that the United States' "reliance upon res judicata is misplaced because the issues presented here were never actually litigated or adjudicated on the merits" and that "[i]ssue preclusion applies only where an issue has been decided and necessarily determined in a prior proceeding." Resp. at 10.[5] While these issues were, in fact, actually litigated, *see* U.S. Mot. at 30-35, it is irrelevant. That standard applies only to issue preclusion, which the United States has not invoked. All that matters is that Count I & II *could* have been litigated in the prior actions, which is not seriously contested.

Similarly, Boyd's laundry list of topics he argues were not previously adjudicated[6] is

---

[5] For this proposition, Boyd cites *Allen*, 449 U.S. 94. *Allen* supports the United States' position, not Boyd's. As discussed *supra*, it lays out the separate standards for res judicata and collateral estoppel.

[6] Boyd states that only that the "1903 proceeding" did not adjudicate that list of items. Resp. at 12. The United States argues that res judicata attached to two proceedings: *Rio Grande*

irrelevant to the res judicata analysis. This case is limited to the specific constitutional claims that Boyd has actually brought, not a venue for any abstract property law question he might wish to have the Court opine on. For res judicata purposes, the only relevant analysis is whether the two counts that the United States argues are barred – Count I by the Court of Federal Claims' decision in 1997 and Count II by *Rio Grande III* – fall within the Tenth Circuit's res judicata test. They do. Count I asserts a specific taking: "Plaintiff's property, including vested diversion works, associated infrastructure, and lien interests, without just compensation." Compl. ¶ 134. The Complaint makes clear that the property in question is the infrastructure and associated property interests of the Company. Boyd makes absolutely no argument that those claims were not, or could not have been brought, before the Court of Federal Claims in 1996.[7] That Boyd was unsuccessful and has since slightly repackaged his claims does not overcome res judicata.

Similarly, Count II – while already not colorable against the United States as it is brought pursuant to the Fourteenth Amendment – makes a specific constitutional claim that notice was insufficient in *Rio Grande III*. Compl. ¶ 137. Again, Boyd does not argue that such claim was not brought, or could not have been brought, in the prior litigation. Nor could he. As the United States has shown, those exact arguments were made unsuccessfully in *Rio Grande III* by Boyd's

---

*III* and the 1996 Court of Federal Claims proceeding. Boyd does not respond regarding the Court of Federal Claims proceeding and thus concedes that his takings claim is barred by res judicata.

[7] While the transactional test means that Boyd need not have specifically identified every property interest purportedly taken for res judicata to apply to all takings claims accrued in the same transaction, the actual claim in 1996 was nearly identical to that made today, and certainly included, e.g., the ownership of diversion works and any interests held by the Company. He sought compensation for:

> ". . . the devaluation of its Capital Stock, franchise rights, undertaking, *rights of way*, reservoir rights and prior right to impound and appropriate the flood waters of the Rio Grande River, and other special privileges and concessions of the Dam & Irr. Co. upon completion of the Leasburg Canal in 1896." *See* Exhibit 3 at 16 (Boyd 1996 Complaint); *see also id.* at 5 (alleging the acquisition of "the rights to *divert* and appropriate.")

predecessors' attorneys. *See* U.S. Mot. 33-35. Every court, up to the United States Supreme Court, agreed that under the governing standards of the day, the process was sufficient.

Indeed, even if the test for issue preclusion rather than res judicata actually was applied to these claims, Boyd would fare no better. His takings claim was actually litigated and dismissed; dismissal on statute of limitations grounds is sufficient for issue preclusion to attach to a takings claim. *See, e.g., Young v. United States*, 92 Fed. Cl. 425, 433–34 (2010), *aff'd*, 417 F. App'x 943 (Fed. Cir. 2011) ("Jurisdictional determinations, including determinations related to the statute of limitations, can be proper subjects for the application of the doctrine of issue preclusion."); *Hornback v. United States*, 52 Fed. Cl. 374, 387, *aff'd*, 55 F. App'x 536 (Fed. Cir. 2002) (same principle applies where a plaintiff "argued his position on the timeliness of his takings claim"). The same holds true for Boyd's other arguments under Counts I and II. Indeed, the courts, up to and including the highest court in the land, have repeatedly heard – and rejected – his litany of arguments concerning lack of jurisdiction and alleged fraud. *See, e.g., Rio Grande III*; *Boyd v. United States*, 1997 U.S. Claims LEXIS 345, at *8; *United States v. Elephant Butte Irrigation Dist.*, No. 97 CV 0803 JAP/RPL, 2014 WL 12783175, at *7 (D.N.M. Oct. 20, 2014); *Boyd Est. ex rel. Boyd v. United States*, 344 P.3d 1013, 1015 (N.M. Ct. App. 2014).

In any event, there is no question that res judicata bars Boyd from relitigating these same or related arguments under Counts I and II – arguments that he plainly raised – or could have raised – in prior litigation. Res judicata applies, and Counts I & II should be dismissed.

**f. Judicial Takings are Not Cognizable.**

As the United States argued in its Motion, Plaintiff has not shown that judicial takings are a cognizable theory. Rather than defend his claims on the merits, Plaintiff now essentially abandons his judicial takings argument. Instead, Boyd now claims that he is "not limited to the

narrow proposition that a single judicial act alone effected a taking" and that "whether characterized as judicial takings, ultra vires government conduct, denial of due process, or inverse condemnation, Plaintiff alleges continuing constitutional injury arising from unresolved jurisdictional and property questions." Resp. at 13-14. This attempt to rewrite his claims is inappropriate, and the United States should not be forced to divine what Plaintiff's actual claims are. Regardless, if Boyd's claims are for the purported inverse condemnation of the Company's property, they fall under Count I and must be dismissed by the application of the Little Tucker Act's jurisdictional limits, the Rooker-Feldman Doctrine, the statute of limitations, and res judicata. If Boyd's claims are for a judicial taking, that is not a constitutionally cognizable claim and also fails due to application of the Rooker-Feldman Doctrine and the statute of limitations.

The Complaint should be dismissed. Boyd has failed to meet his burden of showing that the Court has subject matter jurisdiction and has failed to state a claim.

* * *

Dated: May 26, 2026

Respectfully submitted,

Adam R.F. Gustafson
Principal Deputy Assistant Attorney General

***/s/ Mark Widerschein***
Mark Widerschein, Trial Attorney
Katharine Laubach, Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Mark.Widerschein@usdoj.gov
Katharine.Laubach@usdoj.gov
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing was made through the Court's electronic filing and notice system (CM/ECF).

Dated: May 26, 2026

***/s/ Mark J. Widerschein***
Mark Widerschein